# Richmond

## State-Planters Bank and Trust Company, a Corporation, v. Horace Gans.

January 9, 1939.

Record No. 2006.

Present, All the Justices.

The opinion states the case.

*Sinnott & May* and *V. P. Randolph, Jr.,* for the plaintiff in error.

*Thomas O. Moss,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Horace Gans, a business man of the city of Richmond, for many years had been in the habit of making three or more deposits a week in the State-Planters Bank and Trust Com-

pany of Richmond. On August 7, 1936, he entered this bank for the purpose of making a deposit. As he went up the three steps leading from the vestibule to the main floor, he sustained a severe injury to his knee. A bank official helped him up the steps, and, after a few minutes, he made his deposit and left the bank limping. That night his knee was put in a cast. Several months later Dr. H. Page Mauck, the attending physician, found that the cartilage around the knee had not healed, and advised an operation. In March, 1937, an apparently successful operation was performed, but his knee was left permanently weak. This action was instituted to recover damages for the injury sustained, and resulted in a verdict for $3,500 which the trial court refused to set aside. To that judgment this writ of error was allowed defendant bank.

The sole exception to the rulings of the trial court is its refusal to sustain the motion of defendant to set aside the verdict on the ground that it was contrary to the law and the evidence. Defendant's assignment of error is based upon three grounds: (1) The evidence is not sufficient to convict defendant of negligence; (2) even if defendant were negligent, the evidence does not show that such negligence was the proximate cause of the injuries to plaintiff; and (3) plaintiff was guilty of contributory negligence as a matter of law.

The negligence alleged is that defendant permitted the rubber mats upon the three marble steps leading from the vestibule to the main floor of the bank to become and remain so "dilapidated, deteriorated and worn" that they were not reasonably safe to be used by depositors or other persons entering the bank. There is practically no conflict in the evidence as to the condition of these mats. Even so, in considering the sufficiency of the evidence, we must give plaintiff the benefit of all the evidence and all fair inferences therefrom most favorable to him.

In 1925 the treads to the three marble steps in question were covered with corrugated rubber matting three-sixteenths of an inch thick. The mats were cemented to the

marble treads and were so fastened that they could not slip. The corrugation on the rubber had become worn from constant traffic through the years. The matting was somewhat frayed around the edges and thin in some places, with holes the size of a twenty-five or fifty cent piece. One witness for plaintiff said that some of these holes were as long as an inch or an inch and a half. Around these edges and spots the matting had worn to a feather edge, but it still firmly adhered to the tread. It is apparent from the testimony that the depression or thickness of the matting around the spots and edges in question was less than its original thickness, three-sixteenths of an inch, but there is no evidence that the matting was slick or slippery.

It further appears that more than six hundred persons daily, during business hours, had used these steps for eleven years prior to the accident, and that approximately the same number had used them from the day of the accident until March, 1937, when, in the regular course of business, the old matting was removed and replaced by carborundum. During all this time the plaintiff was the only person known to have been injured on the steps.

■■ Defendant was not an insurer of plaintiff's safety. It was charged with the duty to use ordinary care to maintain its banking building in a reasonably safe condition. The facts and circumstances related do not convict defendant of a breach of this duty.

Plaintiff contends that the decision of this case is controlled by the rules announced in *Norfolk* v. *Anthony*, 117 Va. 777, 86 S. E. 68. The principles of law involved in the two cases are the same, but the facts are quite different. We mention three outstanding factual differences in the two cases.

The plaintiff, in the *Anthony Case*, slipped, fell and broke her hip in a doorway leading into a market. The condition of this entrance was stated by the court to be as follows: (1) The elevation or ridge at the entrance on the west side of this doorway was five-eighths of an inch higher than the floor, and increased in height to two and one-half inches at

the eastern side of the door; (2) the city had permitted the passageway to remain in a filthy condition and become filled with dirt and refuse from the market, such as cabbage leaves, etc., to the extent that certain witnesses testified that it was dangerous to pedestrians entering the market; and (3) lastly, the said entrance was located at a point where it was very dark in broad daylight.

In the case at bar: (1)) The depressions on the tread tapered from a feather edge to less than three-sixteenths of an inch; (2) there was no evidence tending to show that the treads were the least slippery; and (3) the steps were immediately back of glass doors and windows, with nothing to obstruct the sight or vision of persons using them during the day.

In *Mullen* v. *Sensenbrenner Mercantile Co.* (Mo.), 260 S. W. 982, 984, 33 A. L. R. 176, this is said: "As to whether the tile was so slick as to be dangerous: Defendant's evidence is that the tile floor was put down in 1915, and this accident happened four years afterward, and that in the meantime thousands of people must have passed over it before plaintiff was injured, and also after plaintiff was injured, up to the time of the trial, and that no other person was ever injured thereon by slipping or otherwise, although it was always in the same condition as when plaintiff was injured. Such evidence conclusively shows that said tile was not so slick, or said entrance so sloping, or the crack therein so large or of such character as not to be reasonably safe, without rugs or sawdust or any other covering thereon." See *Tryon* v. *Chalmers,* 205 App. Div. 816, 200 N. Y. S. 362; *Chapman* v. *Clothier,* 274 Pa. 394, 118 A. 356; and *W. T. Grant Co.* v. *Webb,* 166 Va. 299, 184 S. E. 465.

The proximate cause of the injury is not clearly established. The plaintiff's own account of how he sustained the injuries is as follows: "As was my usual custom I started up the steps to go in the bank to make the deposit and somehow got hung up on the step; it happened so quick I could not tell what had occurred; my knee was giving me excruciating pain; my knee went out, my foot slipped on the

step and I could not bring my left leg back. I came down on my foot and shifted my foot and leaned somewhat against the wall to rest until I could continue on and it took me several moments to be able to gradually work that knee out straight so I could get my foot flat on the ground again, * * * ." In reply to the question, "Did you tell Mr. Andrews at the time that your foot had slipped on the step?" plaintiff said, "I don't know. I told him something slipped and I did not know what it was on." There is no testimony tending to show that the matting was unusually slick or slippery.

Plaintiff must establish causal connection between the alleged negligence of the defendant and the injury to plaintiff. *Virginian Railway Co.* v. *Haley,* 156 Va. 350, 157 S. E. 776; *Kenny Co.* v. *Dennis,* 167 Va. 417, 189 S. E. 164. Considering all the evidence and all fair inferences therefrom most favorable to plaintiff, we do not find that he has established the negligence of defendant, or that the slight depressions in the step were the proximate cause of his injuries.

Inasmuch as either one of the conclusions stated is decisive of the case, it is unnecessary to discuss the question of plaintiff's contributory negligence.

For the reasons stated, the judgment of the trial court is reversed, the verdict of the jury is set aside, and final judgment will be entered for defendant.

*Reversed and final judgment.*