WALTER REPINSKI *et al.*, Plaintiffs-Appellants, *v.* JUBILEE OIL COMPANY *et al.*, Defendants-Appellees.

First District (5th Division)    No. 79-176

Opinion filed June 6, 1980.

16

Collens & Wright, Ltd., and Blum, Field & Marbell, both of Chicago (Karla Wright and Eva Field, of counsel), for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Robert Retke and Kathleen Ransford, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

Menk and Bishop, of Chicago (John Cadwalader Menk and John T. Mehigan, of counsel), for appellee Jubilee Oil Company.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Walter Repinski, brought this action to recover for injuries he suffered from a fall on a sidewalk in Chicago. His wife also sought to recover for the loss of her husband's support and services. The trial court directed a verdict for defendants at the close of plaintiffs' case. Plaintiffs appeal and contend that the trial court erred: (1) in directing a verdict for defendants, and (2) in granting defendants' motion *in limine* to exclude reference to Walter's suicide attempt and his resulting brain damage.

On November 27, 1973, Walter was walking to his job as a punch press operator as he had for the past 14 years. As he was crossing a driveway which led to a gas station operated by defendant, Jubilee Oil Company (Jubilee), he caught his foot in a depressed area of the driveway and fell. The portion of the driveway on which he tripped was also a sidewalk. He suffered a dislocated humerus and shattered its upper end. He was hospitalized and underwent a series of unsuccessful operations. He was released from the hospital with a permanent disability to his shoulder. Walter was later informed that he would be unable to return to work because of the injury. On March 4, 1974, Walter ingested a number of sleeping pills in an apparent suicide attempt. Although he survived, he was left with brain damage which affects his speech, his numerical ability, and his memory. He has not worked since his fall and requires the constant care of his wife. His condition has been diagnosed as permanent and is not expected to improve.

In their complaint, plaintiffs alleged various instances of defendants'

negligence and specifically that they negligently caused the driveway to be uneven and depressed between one and a half and two inches and negligently failed to maintain the sidewalk in a reasonably safe condition.

Before trial, Jubilee made a motion to exclude any evidence of Walter's suicide attempt. The trial court stated that it found no causal relation between the fall and the suicide attempt and granted the motion *in limine.* Plaintiffs made an offer of proof that if called as witnesses, several neighbors would testify regarding Walter's depression following his release from the hospital and his learning that he was permanently disabled and unable to work. In addition, a psychologist would testify that the suicide attempt was connected with Walter's shame about being unable to work and that there was a causal connection between his accident and the attempted suicide. He would further testify that at the time of the attempt, Walter was suffering from a psychotic condition of depression and was bereft of his free will. He would also describe the resulting brain damage which affects Walter's speech, numerical ability and memory.

The following pertinent evidence was presented to the jury. Walter testified that at 6:30 a.m. on November 27, 1973, he left for work. On his regular route to work he walked two blocks to the Lincoln Avenue bus stop; he then took the Lincoln Avenue bus to Berteau, which took from 10 to 15 minutes. On the morning in question he crossed Berteau to buy a newspaper. He continued walking east on Berteau heading toward work carrying the newspaper and also a lunch bag. The sidewalk was dry.

He testified that he stepped in a hole with the toe of his shoe which became hooked in the hole and he fell. The hole was located on a part of the Jubilee gas station driveway where it crossed the public sidewalk. He said that the driveway was used by cars going in and out. He testified that the hole was circular in shape, about a foot or a foot and a half in diameter, and about an inch and a half deep. He said he had crossed the driveway on his way to and from work for 14 years and had observed the hole for two or three years.

On cross-examination Walter testified that he got off a northbound bus on the southeast corner of Lincoln and Berteau. He said he got there at about a quarter to seven and denied that in an earlier deposition he had said he got to the bus stop at five minutes to seven. He crossed to the northwest corner to get a newspaper, crossed back again and then walked east on Berteau. He testified that he was then about five blocks from work and it would take him about 15 minutes to cover that distance. He denied that he was late for work but admitted that he had testified in his earlier deposition that he was late.

He testified further on cross-examination that several times a week he would walk past the Jubilee gas station over the driveway sidewalk and

that he was familiar with the walk and the hole for at least two years. Although he testified at the trial that he saw the hole in the sidewalk on the morning that he fell, he admitted that in his deposition he had testified he didn't see it. At the time of the accident he was carrying a lunch bag and a newspaper under his arm and the paper was slipping a little as he was walking through the gas station area. He denied that the paper distracted him or that he was not watching where he was going. However, in his prior deposition he testified that he was trying to adjust the newspaper by putting it a little further under his arm when he stepped in the broken concrete and fell.

Edna Repinski, plaintiff's wife, testified that her husband had to be on the job at 7 a.m. She said she could recall saying in her earlier deposition that plaintiff left for work at 20 minutes to seven.

At the close of plaintiffs' case, each defendant moved for a directed verdict. The trial court found no duty or breach of duty by either defendant and granted the motions. Judgment was entered for defendants and this appeal followed.

OPINION

I.

Plaintiffs contend that the trial court erred in directing verdicts for defendants since the evidence presented raised factual disputes which should have been resolved by the jury. Verdicts may be directed only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) With this standard in mind, the propriety of the directed verdicts as to each defendant will be considered.

A. *The City*

■■ It is clear that the city has a duty to maintain its property in a reasonably safe condition (Ill. Rev. Stat. 1977, ch. 85, par. 3—102) and that this duty includes keeping its streets and sidewalks safe for the purposes for which they are intended and for the use of those exercising ordinary care. (*Thorsen v. City of Chicago* (1979), 74 Ill. App. 3d 98, 107, 392 N.E.2d 716.) The city has recognized this duty and has provided for a division of sidewalks for the specific purpose of maintaining and repairing sidewalks. Municipal Code of Chicago, ch. 14, par. 5.

Before liability can be imposed, it must be shown that the city had either actual or constructive notice of the condition that it is not reasonably safe for a sufficient time prior to the injury to have taken corrective action. (*Baker v. City of Granite City* (1979), 75 Ill. App. 3d

157, 160, 394 N.E.2d 33; *Livings v. City of Chicago* (1975), 26 Ill. App. 3d 850, 852, 326 N.E.2d 170.) Constructive notice exists "where a defective condition exists for such a length of time that public authorities, by the exercise of reasonable care and diligence, might have known of the condition." (*Livings*, at 854.) The city does not contend that it did not have sufficient notice of the defect, and considering Walter's testimony that the hole had existed for two to three years, it could hardly do so. See *Livings*.

The city contends that plaintiffs have failed to establish that the defect was of such a nature as to be foreseen by a reasonably prudent person as a source of danger to pedestrians exercising due care for their safety. Plaintiffs assert that that question was for the jury to determine. ■■■ While a city has a duty to maintain its sidewalks in a reasonably safe condition, it does not have to keep them in perfect condition, and slight inequalities in level or other minor defects are not actionable. (*Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, 604, 145 N.E.2d 105; *Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 103-04, 378 N.E.2d 502.) Certain defects are so slight that their actionability may be determined as a matter of law. (See *Warner v. City of Chicago* at 104.) A jury question on the issue of the city's negligence is presented only when the defect in the sidewalk is such that a reasonably prudent man should anticipate some danger to persons walking upon it. (*Arvidson*, at 605; *Baker*, at 160.) There is no bright line test to determine when a defect is so slight that it becomes a question for the court or should be submitted to the jury, and each case must be determined on its particular facts and circumstances. (*Arvidson*, at 604; *Warner*, at 104.) The question is properly withdrawn from a jury only where all reasonable minds would agree that a purported defect is so minor that no danger to pedestrians could reasonably be foreseen. See *Arvidson*, at 609; *Baker*, at 160.

Although the supreme court has stated that no mathematical standard can be established to determine the unreasonableness of a defect (*Warner*, at 104; *Arvidson*, at 604), it appears that under certain circumstances a variance of 2 inches may be actionable while one of 1⅛ inches may not be. (*Warner*, at 104-05.) In addition, the location of the defect may be considered in determining whether the defect is actionable, since a slight defect in a residential area may be nonactionable, while in a commercial area it may be actionable. *Warner*, at 104.

■ Walter described the defect as being 1½ inches deep and 1½ feet in diameter. From the photographs contained in the record, it appears that the defect is located in a predominantly residential area, although the gas station itself could be considered a commercial use. From Walter's description of the defect, it cannot be said that all reasonable minds would agree that the defect is so minor that the city could not reasonably

foresee any danger to a pedestrian. Thus, a jury question as to the unreasonableness of the defect was presented.

██ Finally, there is a question of whether Walter was contributorily negligent so as to bar any recovery. Walter testified that he had followed the same route to work for 14 years and had been aware of the hole for two or three years before the accident. His testimony was conflicting as to whether he saw the hole on the morning in question. There was also conflicting testimony concerning his activities just before the fall and whether he was distracted by the newspaper or not.

> "The use of a defective sidewalk by a person who has knowledge of the defect is not contributory negligence *per se*, and if, while walking upon that sidewalk, such person is in the exercise of ordinary care for his or her safety, there may be a recovery in case of an injury." (*Swenson v. City of Rockford* (1956), 9 Ill. 2d 122, 127, 136 N.E.2d 777.)

The facts in *Swenson* are very similar to those in the instant case. There the plaintiff slipped on an irregularity in a sidewalk and fell. She had traversed the same route for four or five times weekly for 10 years, had observed the defect in the past, and had again seen it just minutes before her fall. The supreme court stated that contributory negligence is ordinarily a fact question for the jury and is not a matter of law unless all reasonable minds would agree that assuming the facts as presented by plaintiff and drawing all reasonable inferences in his favor, plaintiff is nonetheless contributorily negligent. (*Swenson*, at 127-28.) On the facts there presented, the court concluded that the question of contributory negligence was properly submitted to the jury. The same is true of this case. It cannot be said that all reasonable minds would agree that assuming the evidence presented and all reasonable inferences drawn in Walter's favor, he was contributorily negligent. The jury should have been allowed to determine that fact.

Since a verdict in favor of the plaintiffs and against the city is possible based on the evidence presented, the trial court erred in directing a verdict in the city's favor.

### B. *Jubilee*

██ Jubilee is an abutting landowner. In general, an abutting owner is not held liable for personal injuries incurred on a public sidewalk under the control of a municipality. (*Decker v. Polk Brothers* (1976), 43 Ill. App. 3d 563, 565, 357 N.E.2d 599; *Burns v. Kunz* (1937), 290 Ill. App. 278, 282-83, 8 N.E.2d 360.) Its duty is succinctly set out in the Illinois Pattern Jury Instructions, Civil, No. 135.01 (2d ed. 1971), as follows:

> "The owner of property abutting a public sidewalk is under a duty to exercise ordinary care not to create an unsafe condition

[which would interfere] [by interfering] with the customary and regular use of the walk."

Plaintiffs contend that this is a proper statement of the duty of an abutting landowner who does not use the sidewalk for business purposes but that a nondelegable duty of reasonable care is owned by those who assume the use of the sidewalk for their business purposes. They cite *King v. Swanson* (1919), 216 Ill. App. 294; *Donovan v. Raschke* (1969), 106 Ill. App. 2d 366, 246 N.E.2d 110; and *McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345, 272 N.E.2d 369, as illustrative of cases wherein the higher duty has been imposed.

In *King*, the plaintiff slipped on ice which had accumulated on the sidewalk in front of the defendant's laundry. The evidence showed that although snow and ice covered the entire sidewalk, a certain 4-foot wide strip between the curb and the shop was especially slippery due to defendant's dragging large laundry baskets across it. The court stated the duty of the abutting landowner as follows:

"* * * It is true that abutters upon the street may use the sidewalk in front of their premises for the purpose of loading and unloading goods or merchandise, and may thus temporarily obstruct the use of the street, providing it is reasonably necessary to do so. But where an abutter does so, it is his duty to see that such use does not make the sidewalk dangerous for persons rightfully using it." (216 Ill. App. 294, 298.)

Because the defendant's use of the sidewalk in his personal business rendered the sidewalk unsafe, the court held him responsible for the resulting injuries.

In *Donovan*, the trial court had directed a verdict for the defendant who had caused building materials to be placed on the sidewalk in front of his building while remodeling work was being done by a contractor. Scaffolding and other construction materials on the sidewalk allowed only a narrow space for passage. As the plaintiff walked by, she tripped over a roll of wire mesh which fell in front of her. The court stated the owner's duty as follows:

"An owner of property which abuts a public sidewalk owes a duty to keep the sidewalk free from any condition which may create a danger or a hazard to persons lawfully upon the street. [Citation.] And the duty thus imposed on the owner is non-delegable." (106 Ill. App. 2d 366, 369-70.)

The court found ample evidence to warrant submission of the case to the jury and found that the trial court erred in directing the verdict.

In *McDonald*, plaintiff was injured when she fell in a hole 12 inches deep and 2 feet wide in the parkway next to defendant's parking lot. The hole was the result of trenching undertaken to install a gas line to

defendant's business. The evidence revealed that defendant assumed control of the parkway for the ingress and egress of its patrons, allowed patrons to park in such a way as to necessitate their use of the parkway, and knew of the hole's existence for some time before the accident. In upholding the defendant's liability, the court recognized both the duty of an inviter to provide an invitee with reasonably safe means of ingress and egress and also the abutting landowner's duty of reasonable care to noninvitees where he has assumed the use of the sidewalk-parkway.

While the cases cited by plaintiffs do impose a broader duty of reasonable care on those who assume the use of sidewalks for their business purposes than for those who do not, we do not find them dispositive of the instant case. In each of those cases the defendant performed an affirmative act to assume the use of the sidewalk or other area for his own business purposes. The action in each case created an unsafe condition which interfered with the customary and regular use of the sidewalk for pedestrian traffic. This distinction has been noted in 9 Ill. L. & Prac. *Cities, Villages and Other Municipal Corporations* §536, at 127-28 (1954), where the various cases have been interpreted to state the following general rule:

"Where a sidewalk is a part of the public street under the control of the municipality, an abutting owner or occupier has no duty with respect to pedestrians using the sidewalk to keep it in repair, and he is not liable for personal injuries sustained by the traveling public due to his failure to repair defects in the sidewalk. On the other hand, an abutting owner is responsible, even to pedestrians, for personal injuries sustained as a proximate result of the dangerous condition of a sidewalk adjoining his property when the dangerous condition was directly occasioned by him."

In the instant case there was no evidence presented which showed that Jubilee committed any act which created the defect in the driveway. Plaintiff contends that Walter's statement concerning the use of the driveway that "Well, cars go in and the cars go out" and judicial notice that driving cars on a sidewalk will break and damage it (*City of Elmhurst v. Buettgen* (1946), 394 Ill. 248, 252, 68 N.E.2d 278) would permit a jury to find that traffic (including, plaintiffs presume, trucks and gasoline carriers) from Jubilee's station caused the defect which resulted in Walter's fall. They argue that in the absence of direct testimony a jury could infer from the circumstances of the case that the gas station traffic created the hole in the driveway.

As the supreme court recognized in the *Buettgen* case, there is a difference between a sidewalk and a driveway and while a private driveway of an abutting landowner may be considered part of the sidewalk, its purpose is quite different. (394 Ill. 248, 252-53.) An abutting

landowner has a right to make reasonable use of sidewalks and driveways for the ingress and egress from his property. (See *Sabath v. City of Chicago* (1965), 56 Ill. App. 2d 307, 319, 206 N.E.2d 286; *Salem National Bank v. City of Salem* (1964), 47 Ill. App. 2d 279, 282, 198 N.E.2d 137.) The evidence at trial showed that Jubilee was using its drive for its intended purpose and there was no evidence that the use was unreasonable or interfered with pedestrian traffic. There was no showing that Jubilee actively created an unsafe condition other than speculation that normal deterioration incident to the use of the driveway occurred over time. The circumstances presented at trial did not show that Jubilee failed to exercise ordinary care in its activities resulting in an unsafe condition. Jubilee did not breach its duty as an abutting landowner and the directed verdict in its favor was proper.

## II.

Plaintiffs also contend that the granting of the motion *in limine* to preclude evidence of Walter's suicide attempt was error since the offer of proof showed that a proper foundation for its introduction could be established at trial. The city asserts that the evidence was properly excluded since the complaint did not disclose the suicide attempt or allege that it was proximately caused by the defendants's negligence.

■■ Plaintiffs' complaint alleged that as a result of defendants' negligence, Walter "sustained divers injuries, both internally and externally, of a permanent and lasting nature, including loss of a portion of his arm * * *." Where allegations of injury in a complaint are general, any injury that can reasonably be included in the allegation may be proved, but if the complaint specifies a particular injury or injuries, then only those injuries may be proved. (*Richards v. Illinois Central R.R. Co.* (1915), 197 Ill. App. 282, 285.) Although the complaint is not a model pleading, and Walter's claimed injuries could have been stated more fully, we note that the injuries complained of were not limited to the loss of the use of the arm. Construing the complaint liberally (Ill. Rev. Stat. 1977, ch. 110, par. 33(3)), the brain and other damage caused by the suicide attempt could be included in the divers internal and external injuries which Walter alleges were suffered as a direct result of defendants' negligence.

Clearly, it would have been more ideal and appropriate to plead the injuries related to the suicide attempt specifically, particularly as it appears from the record that plaintiffs' counsel was not made aware of the attempt until a substantial period after suit had been filed. However, defense counsel was informed of it before trial and had an opportunity to depose the treating psychiatrist. Defendant does not claim any surprise or

prejudice resulted from the late disclosure. Therefore, we consider the complaint to be sufficiently broad to include the injuries from the suicide attempt.

Turning to the merits of this issue, based upon plaintiffs' offer of proof the trial court erred in excluding the evidence of the suicide attempt. The admissibility of evidence of a suicide attempt in a negligence case is governed by *Little v. Chicago Hoist & Body Co.* (1965), 32 Ill. 2d 156, 203 N.E.2d 902. Before the trial court and again in their brief, plaintiffs have treated *Little* as separate and distinct from *Stasiof v. Chicago Hoist & Body Co.* (1964), 50 Ill. App. 2d 115, 200 N.E.2d 88, *aff'd sub. nom Little v. Chicago Hoist & Body Co.* and have argued that *Stasiof* is determinative here. In fact, Mr. Little was involved as a co-plaintiff with Stasiof and appealed the appellate court's exclusion of the evidence of his suicide attempt to the supreme court, hence the caption *Little v. Chicago Hoist & Body Co.* We find that the *Little* case states the applicable law.

*Little* involved a suicide attempt by a victim of an automobile accident some five years after the accident. In the interim period, Mr. Little had returned to work and "had lived a reasonably normal sane existence." (50 Ill. App. 2d 115, 124.) The supreme court recognized the "universal rule followed by most jurisdictions" that where a person is capable of deciding against an attempt, suicide is a new and independent agency which breaks the causal chain and is not a reasonably foreseeable result of the original negligence. (32 Ill. 2d 156, 158-59.) However, the court went on to cite the "better view" expressed in Prosser, Torts §49, at 273-74 (2d ed. 1955) that if insanity prevents the victim from realizing the nature of his act, the suicide is considered a direct result or a normal incident of the risk for which the defendant is liable. However, if the suicide occurs during a lucid interval when the victim is in full command of his faculties but his life has become unendurable, his voluntary choice supercedes the defendant's liability. What was the "better view" in 1955 has since become the "prevailing view." Prosser, *Torts* §44, at 280 (4th ed. 1971).

The court in *Little* found that although there was evidence of a causal connection between the accident and the suicide attempt, the lapse of five years between the two events and the absence of proof that Little's mental condition was such that the attempt was other than of his own deliberate choice precluded the introduction of evidence of the attempt. According to *Little*, the admissibility of evidence of a suicide attempt appears to be dependent on the following factors: (1) the temporal proximity between the accident and the suicide attempt; (2) establishment of a causal connection between the original injury and the

attempt; and (3) evidence that insanity prevented plaintiff from realizing the nature of his act or controlling his conduct.

A review of the facts in this case and the evidence proffered in the offer of proof reveals that the foregoing factors could be satisfied by plaintiffs. The suicide attempt took place on March 4, 1974, slightly more than three months after the accident and shortly after Walter learned that he was permanently disabled and would be unable to work. The time lapse is not so great as to rule out any connection between the accident and the suicide attempt. Plaintiffs' counsel stated that a psychiatrist would testify that there was a causal connection between the two events and that Walter was suffering from a psychotic condition of depression which left him bereft of his free will. When asked by the court whether the psychiatrist was convinced that plaintiff was "insane or suffering from a disabling psychosis at the time of the suicide act?" plaintiffs' counsel replied affirmatively. The requirements for the admission of the evidence had been met and the evidence should be admitted at trial.

The question of proximate cause is generally for the jury. (*Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 130, 374 N.E.2d 203.) In the instant case, the jury must decide whether the suicide attempt was caused by insanity which resulted from the fall or was a conscious, voluntary decision by Walter who had found his present state in life to be unendurable.

Accordingly, the judgment in favor of Jubilee is affirmed, the judgment in favor of the city is reversed, and the cause is remanded for a new trial not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.

LORENZ and WILSON, JJ., concur.