JAMES J. TRACY, Plaintiff-Appellee, *v.* THE VILLAGE OF LOMBARD, Defendant-Appellant.

Second District   No. 82—441

Opinion filed July 14, 1983.

Marvin J. Glink and Katherine S. Janega, both of Ancel, Glink, Diamond, Murphy and Cope, P.C., of Chicago, for appellant.

Robert E. Dyer, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant village appeals from the judgment of the circuit court of Du Page County in favor of plaintiff, who broke his leg after falling on a stairway in the village hall. Because we find no error at trial and the case was properly submitted to the jury, we affirm.

Plaintiff, James J. Tracy, brought this action to recover from injuries suffered in a fall on a stairway in the village hall of defendant, the village of Lombard (village). On the morning of May 21, 1980, Tracy appeared in traffic court in the courtroom on the top floor of the village hall. Tracy at that time was on crutches, having suffered an injury to his left hip in a prior accident. Tracy was found guilty of a traffic offense and left the courtroom accompanied by Debbie Jean Phillips, who has since married Tracy. Eyewitnesses for the village testified that Tracy was angry and moved rapidly as he left, which was denied by Tracy and his wife. Tracy proceeded down the first series of stairs a few steps behind Phillips. He fell when he reached the third step up from the first landing, asserting that his left crutch caught in the stair tread. In his fall, Tracy broke his left femur about three inches below the previously suffered fracture.

The stairs where Tracy fell were dry and clear of debris. However, there were cracks in the tile of which Tracy and the village submitted numerous photographs. The only measurements of the cracks admitted into evidence were those taken by Donald Ross Bauer, the village's building inspector, with a ruler. At trial, Bauer described the design of the stairs and the tile and their maintenance. Bauer reported the dimensions of the nine measurable cracks on the third step

up from the landing. Although no widths were taken on those nine cracks, Bauer testified that none were significantly wider than the ruler, which he described as "a weak 1/8" inch. Depths ranged from 1/16 inch to 3/32 inch. Lengths ranged from two to nine inches. The village introduced into evidence a diagram of Bauer's measurements.

For Tracy, Dr. Joseph C. Ritscherle testified concerning Tracy's medical condition before and after the accident at issue here. Also for Tracy, Lynn Barnes testified concerning construction work he would have given to Tracy to do on his restaurant if Tracy had been able.

The jury returned a verdict in Tracy's favor, but found Tracy to be 50% comparatively negligent. It therefore assessed recoverable damages of $62,500 as 50% of the $125,000 that it had determined to be the amount of damages suffered. The trial court denied the village's motions for a directed verdict, for a judgment notwithstanding the verdict, and for a new trial, and entered judgment on the verdict.

On appeal, the village raises several issues: (1) whether cracks in stairway tile of the size in this case are nonactionable as a matter of law; (2) whether a judgment for the village notwithstanding the verdict should be awarded; (3) whether proffered evidence of the absence of previous accidents on the stairway was properly excluded; (4) whether the village's jury instructions relating to its notice of the unsafe condition were properly denied; (5) whether Tracy's evidence on lost earnings was too speculative to be admissible; (6) whether the jury was properly instructed on aggravation of a prior injury; (7) whether Tracy's counsel's arguments warrant a new trial; and (8) whether the damages awarded were excessive.

A local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition. (Ill. Rev. Stat. 1979, ch. 85, par. 3—102; *Hennings v. Centreville Township* (1973), 56 Ill. 2d 151.) The village first contends that under this standard the cracks in the tile of the stairway were so small as to be nonactionable as a matter of law. The village's witness measured the cracks to be no more than 3/32-inch deep and about 1/8-inch wide.

The village cites *Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, and its progeny for the proposition that, where all reasonable minds would agree that a defect is so minor that no danger could reasonably be foreseen, the question should be withdrawn from the jury. These cases all related to sidewalk defects and emphasized that, in determining which defects are "minor," each case must be examined as to its own particular facts. (11 Ill. 2d 601, 604; *Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 104; *Repinski v. Jubilee Oil Co.* (1980), 85 Ill. App. 3d 15, 20, 405 N.E.2d 1383, 1387; *Baker v. City of Granite*

*City* (1979), 75 Ill. App. 3d 157, 160, 394 N.E.2d 33, 34.) While all agreed that minor sidewalk defects are not actionable, each concluded that the defect in the sidewalk at issue, which ranged in those cases from 1½ inches deep to "about 2" inches deep, was actionable under the circumstances. (*Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601; *Warner v. City of Chicago* (1978), 72 Ill. 2d 100; *Repinski v. Jubilee Oil Co.* (1980), 85 Ill. App. 3d 15, 405 N.E.2d 1383; *Baker v. City of Granite City* (1979), 75 Ill. App. 3d 157, 394 N.E.2d 33.) However, *Warner* suggests that a 1⅛-inch variance would not be actionable (72 Ill. 2d 100, 104), and in *Walter v. City of Rockford* (1947), 332 Ill. App. 243, 74 N.E.2d 903, a 3/4- to 1-inch variance was held nonactionable.

More on point, the village discusses five cases in which the condition of a stairway is at issue. In each of the five, the reviewing court held that a directed verdict or judgment notwithstanding the verdict in the defendant's favor would have been appropriate. In *Robinson v. Southwestern Bell Telephone Co.* (1960), 26 Ill. App. 2d 139, 167 N.E.2d 793, the court concluded that there was no evidence of negligence where the plaintiff allegedly tripped on a rubber mat at the top of a stairway. The mat, which had ¹¹/₁₆-inch wide and ⅛ to ¼ inch deep hexagonal holes, was not shown to be damaged or in a defective condition. In *Turner v. Chicago Housing Authority* (1956), 11 Ill. App. 2d 160, 136 N.E.2d 543, testimony that the metal nosing of a step was "shiny" and "slippery" was insufficient to establish the existence of an unsafe condition. In *Heneghan v. Carson Pirie Scott & Co.* (1936), 285 Ill. App. 595, 3 N.E.2d 153 (abstract of opinion), the plaintiff failed to make out a *prima facie* case since there was no proof that the stair or the metal strip on which she allegedly tripped was in a defective or dangerous condition. In *McKnight v. Wire Properties, Inc.* (D.C. App. 1972), 288 A.2d 405, the plaintiff claimed that her heels caught in the metal corrugations or grooves measuring 3/8-inch wide and 3/16-inch deep. The reviewing court affirmed the judgment *n.o.v.* for defendant because there was no evidence of negligent construction or maintenance. Finally, in *State-Planters Bank & Trust Co. v. Gans* (1939), 172 Va. 76, 200 S.E. 591, the court found insufficient evidence of negligence where the 3/16 inch thick rubber treads on marble stairs were somewhat frayed around the edges and had holes the size of a 25 or 50 cent piece.

As noted, the determination of whether a defect is so minor as to be nonactionable depends upon the particular facts of each case. (*Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 104.) However, in *River v. Atlantic & Pacific Tea Co.* (1961), 31 Ill. App. 2d 232, 175

N.E.2d 593, the court, while recognizing the particularities of each case, found a discernible pattern in negligence cases involving the conditions of flooring in business establishments. That court noted that "if there is positive evidence of defects in the flooring, such as holes, worn boards or depressions, and some direct evidence, however slight, which associates plaintiff's fall with that defect, the problem becomes a jury question and verdicts for plaintiffs are usually affirmed. [Citations.] Where, however, the fall occurs upon a floor not having any depression, concavity, hole or other defective condition and there is nothing upon which the jury can reasonably find negligence, it is improper to submit the case to the jury." 31 Ill. App. 2d 232, 236-37, 175 N.E.2d 593, 595-96.

Similarly, in *Robinson v. Southwestern Bell Telephone Co.* (1960), 26 Ill. App. 2d 139, 167 N.E.2d 793, the court stated the following:

> "Examination of rules of law on this subject discloses that liability may result when some foreign substance is placed or allowed to remain on the floor so that it causes a person to slip and fall. On the other hand, it is held that if slipping and falling occurs on the natural floor, such as polished wood, tile or terrazzo, there is no liability on the ground that there is no negligence in having a floor of common accepted design." 26 Ill. App. 2d 139, 143, 167 N.E.2d 793, 795.

Thus, it appears that in flooring cases some positive evidence of a defect, however slight, is enough to send the case to the jury, provided causation is also established. In each of the cases cited by the village, with the exception of the non-Illinois case of *State-Planters Bank & Trust Co. v. Gans* (1939), 172 Va. 76, 200 S.E. 591, the only possible defect would have been in design, and the plaintiff did not prove unreasonably dangerous design. By contrast, in the present case it is undisputed that measurable cracks not originally in the tiles had developed. The existence of these cracks places this case in the first category of cases discussed in *River v. Atlantic & Pacific Tea Co.* (1961), 31 Ill. App. 2d 232, 175 N.E.2d 593, those in which "there is positive evidence of defects in the flooring, such as holes, worn boards or depressions." See *Swanson v. S.S. Kresge Co.* (1939), 302 Ill. App. 455, 24 N.E.2d 62, and other cases cited in *River v. Atlantic & Pacific Tea Co.* (1961), 31 Ill. App. 2d 232, 236-37, 175 N.E.2d 593, 595.

While the pattern in cases involving a flooring or stairway defect appears to allow smaller defects to go to the jury than in some of the sidewalk cases discussed earlier, the difference may be justifiable for several reasons. Defects in sidewalks may be avoided more easily than

defects in stairs. Indoor flooring and stairways are not exposed to the weather. Further, they may be more easily monitored for defects. A trip on a stairway is potentially more dangerous because of the likelihood of a fall down the stairway.

■ In sum, although the measurable cracks here were very small, we hold that they constituted positive evidence of a defective condition, the unsafe character of which was properly given to the jury to determine.

■■ ■ The village next contends that it is entitled to a judgment notwithstanding the verdict because Tracy failed to establish a *prima facie* case. Under the rule in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, a judgment notwithstanding the verdict or a directed verdict ought to be granted only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. The village argues that the lack of evidence of duty, proximate cause, and the village's notice of the unsafe condition warranted a judgment notwithstanding the verdict. The village also contends that it is entitled to a judgment notwithstanding the verdict because it established the *prima facie* elements of an affirmative defense to which Tracy offered no contrary evidence: the village's lack of notice of the unsafe condition.

The village notes that for a court to find the existence of a legal duty the occurrence involved must have been reasonably foreseeable, not simply foreseeable. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372; *Reed v. Danville Concrete Products Co.* (1981), 102 Ill. App. 3d 205, 429 N.E.2d 605.) It argues then it was not reasonably foreseeable that a crutch the size of Tracy's should catch in such a small crack in the stairway tile as present here. The village concedes, however, that foreseeability of a person on crutches using the stairs and its duty to exercise ordinary care in maintaining the stairs in a reasonably safe condition. Given our determination that the cracks here were not so small as to be nonactionable and the foreseeability of the use of the stairs by someone on crutches, we conclude that it was reasonably foreseeable that an accident of the nature that did take place would occur.

■■ The village next argues that Tracy failed to establish proximate cause. Its first point is that if Tracy was standing where he said he was, his left crutch (*i.e.*, the one that he alleged caught in a crack) would have touched the tile in an area where there were only unmeasurable, hairline cracks. Our examination of the exhibits refutes this position. It is apparent from Tracy's indications on the photo exhibits

that he claimed that his crutch caught in a crack on step 3, most likely crack No. 2, but possibly Nos. 1, 3, or 4 (as numbered in defendant's exhibit No. 17). Tracy testified that his shoulder was six inches from the right-hand railing. The bottom of his crutch, because the crutch was "flanged up," was only three or four inches from the end of the step. He testified that his two crutches were "maybe 2½ feet apart, 2 feet." Defendant's exhibit No. 17 shows crack No. 2 to stretch between 23 and 27 inches from the end of the step. Thus, Tracy's right crutch would have been 19 to 24 inches from the length of crack No. 2. Similarly measured, Tracy's right crutch would have been 31 to 35 inches from the length of crack No. 4. A distance of 19 to 24 or 31 to 35 inches is reasonably approximate to the estimated distance between the crutches of 2 to 2½ feet. Therefore, this was sufficient evidence that Tracy's fall was proximately caused by his left crutch catching in a crack in the alleged manner to give the question to the jury.

The village secondly argues that the testimony of Tracy's wife places Tracy's crutches in a different location and one equally unsupportive of his theory of the cause of the fall. Because this court must look at the evidence in its aspect most favorable to Tracy, the testimony of Tracy's wife, even if accurately characterized by the village, will not be used to detract from the sufficiency of Tracy's testimony.

The village also argues that the evidence of the manner in which Tracy fell was inherently unbelievable. Tracy testified that, after catching his left crutch in a crack on the third step up from the landing, he fell, hitting his left hip on the first or second step. His fall was not directly forward but toward the middle of the stairs to his left as he still held the right-hand crutch. Although his wife partially broke his fall, he rolled onto his right side and ended up on the landing. On the landing, his head was just about even with the left railing and his feet were three or four feet from the right railing. This version of the fall presents a plausible sequence of events. Once again, to the extent that Tracy's wife's testimony may be inconsistent with Tracy's version, it should not detract from it when the evidence is viewed most favorably to Tracy.

Finally with regards to causation, the village maintains that Tracy's testimony was equivalent to the testimony in *Robinson v. Southwestern Bell Telephone Co.* (1960), 26 Ill. App. 2d 139, 167 N.E.2d 793, and in *McKnight v. Wire Properties Inc.* (D.C. App. 1972), 288 A.2d 405, which testimony those courts held to be insufficient to permit the case to go to the jury. However, those cases are distinguishable. In *Robinson,* the court held that there was no evidence of negli-

gence where the plaintiff claimed that her fall was caused by a rubber mat which was shown to be in excellent condition. In *McKnight* the court upheld a judgment *n.o.v.* because the plaintiff's testimony that something caught her heel and that the tread of the steps contained corrugations or grooves was not evidence of defective construction of design of the steps nor proof that the grooves caused her fall. Here, the tile in the steps was defective in that it contained cracks, obviously contrary to the original design. Additionally, Tracy's testimony placed his left crutch in an area of the stair which was dry, clear and smooth except for the cracks. This was sufficient for causation.

■ The third element of the *prima facie* case which the village contends was not established is actual or constructive notice of the unsafe condition of the stairs. A local public entity is not liable for an injury unless it is proved that it has actual or constructive notice of the existence of the condition that is not reasonably safe and sufficient time prior to the injury to have taken corrective action. (Ill. Rev. Stat. 1979, ch. 85, par. 3—102; *Repinski v. Jubilee Oil Co.* (1980), 85 Ill. App. 3d 15, 405 N.E.2d 1383; *Baker v. City of Granite City* (1979), 75 Ill. App. 3d 157, 394 N.E.2d 33.) It is unclear whether notice of the unsafe condition is an element of the plaintiff's *prima facie* case or only becomes an issue if lack of notice is raised as an affirmative defense. (See generally *Edwards v. Willcutts* (1974), 20 Ill. App. 3d 699, 313 N.E.2d 529, stating the rule that a party relying on a statute need not negative an exception or a proviso unless it is contained in the enacting clause rather than a subsequent clause.) However, the distinction is not important here because on appeal the village argues lack of evidence of notice both as a deficiency in Tracy's *prima facie* case and as an affirmative defense. Moreover, Tracy does not attempt to argue this distinction. We must address the issue of notice in any event.

A distinction which the parties do argue is the nature of the requisite notice itself. The village concedes that it had notice of the cracks in the stairway tile, but maintains that it did not have notice that the condition was not reasonably safe. Tracy argues that the statute only requires notice of the condition; it is the jury's function to determine whether that condition was not reasonably safe. Neither party provides authority interpreting the provision at issue.

■ Section 3—102(a) provides in part that "a local public entity *** shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe ***." (Ill. Rev. Stat. 1979, ch. 85, par. 3—102(a).) The village would suggest a reading of this provision to the effect that it

must have notice both of the condition and of the unsafe nature of that condition. However, we believe that the phrase "that is not reasonably safe" modifies the word "condition" and is not meant to list a second element the notice of which must be proved. Thus, our reading is that the village must have notice of a condition which, whether or not the village knows it, happens to be unsafe.

Although we find no case directly addressing this particular issue of statutory interpretation, we do find support for our reading in analogous cases. In *City of Murphysboro v. O'Riley* (1890), 36 Ill. App. 157, it was held that when a city has notice, either actual or constructive, of the existence of a defect in a sidewalk, it becomes the duty of the city to look after it, and proof at trial that it was dangerous or unsafe is sufficient without proof of notice to the city before the injury that the defect was such a one as rendered the walk unsafe. Therefore, the appellate court affirmed the trial court's refusal of a jury instruction that stated that, in order for the city to be liable, the plaintiff must prove not only notice of the defect, but also notice of the dangerous character of the defect. While that opinion was rendered long before the 1965 enactment of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 1—101 through 10—101), the notice provision of that statute codified a preexisting common law requirement. (See *Boender v. City of Harvey* (1911), 251 Ill. 228.) Also, it has been held that under the Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, pars. 60 through 69) notice of a condition is notice of a dangerous condition, if the condition is in fact dangerous. *Schultz v. Henry Ericsson Co.* (1914), 264 Ill. 156; *Miller v. DeWitt* (1965), 59 Ill. App. 2d 38, 208 N.E.2d 249, *aff'd in part, rev'd in part on other grounds* (1967), 37 Ill. 2d 273.

The village notes the provision in subsection (b)(1) of section 3—102 that a public entity does not have constructive notice if its reasonably adequate inspection system would not have discovered the existence of the condition *and* its character of not being reasonably safe. (Ill. Rev. Stat. 1979, ch. 85, par. 3—102(b)(1).) It argues that this provision lends support to its reading of subsection (a). However, it is consistent with our reading of the notice provision for the legislature to provide that constructive notice be more easily defeated by a defense such as the reasonably adequate inspection system. Particularities of that defense do not necessarily affect the nature of the notice requirement in subsection (a).

■ Because the village concedes notice of the condition, Tracy has met his *prima facie* burden, if any, to show notice of the unsafe condition.

For the reasons just stated, the village has not established the *prima facie* elements of its affirmative defense for lack of notice of the unsafe condition. Since Tracy established a *prima facie* case and the village did not establish its affirmative defense, the village is not entitled to a judgment notwithstanding the verdict.

The village next raises an evidentiary question related to the notice issue. The trial court refused to permit testimony offered by the village that there had been no prior accidents on that stairway in the past 14 years to which the witness could attest. The village asserts that that evidence was relevant to the issue of its notice of the unsafe condition. The trial court blocked this testimony as irrelevant because the village had, by stipulation to notice of the condition of the stairway, removed that issue from the trial.

Evidence of a history of no accidents is permissible for the limited purpose of showing absence of notice of a dangerous condition, provided that the proof shows that the condition had been unchanged. (*Wolczek v. Public Service Co.* (1930), 342 Ill. 482; *Robinson v. Southwestern Bell Telephone Co.* (1960), 26 Ill. App. 2d 139, 167 N.E.2d 793; see discussion in E. Cleary and M. Graham, Handbook of Illinois Evidence sec. 401.15 (3d ed. 1979).) The village stipulated to notice of the condition of the stairway as depicted in Tracy's photographic exhibit while not stipulating to a defect. However, as discussed, this stipulation was sufficient to prove statutory notice. Once notice of the unsafe condition was removed as a disputed issue in the cause, evidence of the absence of previous accidents became irrelevant. Therefore, there was no error in the trial court's refusal to permit that proffered testimony.

The village's final contention relating to the notice issue pertains to jury instructions. It assigns error in the trial court's refusal of its instructions Nos. 15, 18, and 19 and in the trial court's giving of Tracy's instructions Nos. 2 and 3. Defendant's instruction No. 15 restated in full section 3—102. Defendant's instruction No. 18 and plaintiff's instruction No. 2, both patterned after Illinois Pattern Jury Instruction (IPI), Civil, No. A20.01 (2d ed. 1981 Supp.), are similar except that the village's recites its affirmative defenses. Likewise, defendant's instruction No. 19, patterned after IPI Civil No. A21.03, and plaintiff's instruction No. 3, patterned after IPI Civil No. A21.02, are similar except that the village's again recites its affirmative defenses. The trial court's decision with regard to each of these instructions was predicated on its determination that the defense of notice was no longer in the case. In light of the previous discussions, the trial court did not abuse its discretion with regard to these instruc-

tions. See *Livings v. City of Chicago* (1975), 26 Ill. App. 3d 850, 326 N.E.2d 170, where no error was found in the trial court's refusal to instruct on the issue of notice in part because the plaintiff's evidence of notice was such that the trial court might well have found that the defendant-city had constructive notice as a matter of law.

■■ The village contends that the testimony of Tracy and Lynn Barnes, owner of El Adobe Restaurant, regarding Tracy's lost earnings of the profits on work for which he would have received $7,581 was too speculative. It argues that the prejudice resulting from this testimony coupled with other trial errors warrants a new trial. Testimony as to loss of earnings which is merely speculative, remote or uncertain is improper. (*Christou v. Arlington Park-Washington Park Race Tracks Corp.* (1982), 104 Ill. App. 3d 257, 432 N.E.2d 920.) Most of the village's criticisms of the loss of earnings testimony are matters affecting credibility only. These criticisms include the following facts: that the firms actually hired by Barnes to do the jobs that Barnes said Tracy would have done did other jobs for Barnes both before and after Tracy's accident; that Tracy was not licensed as an electrical contractor; that Tracy's estimations of the profits that he would have received were not documented; and the fact that a late 1980 roof job which Barnes testified that Tracy would have done was not included in a document Barnes had submitted to the village as a list of all work done. The village correctly points out that while Barnes testified that he offered jobs to Tracy in January and May 1980 and knew he was on crutches, Barnes did not testify that he offered any work to Tracy after May 1980. However, Barnes was never specifically asked if he offered Tracy jobs after May 1980 and did affirm that he would have given certain jobs in the latter half of 1980 to Tracy if Tracy had been able to do them.

■■ ■ This testimony, aside from the question of credibility, was not too speculative or uncertain. In order to recover lost earnings, all the law requires is that the plaintiff present evidence which will establish, with a fair degree of probability, a basis for the assessment of damages. (*Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143; *Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 425 N.E.2d 1060.) Barne's positive testimony that he would have hired Tracy but for Tracy's disability and Tracy's estimation of profit margin were sufficient. Compare *Christou v. Arlington Park-Washington Park Race Tracks Corp.* (1982), 104 Ill. App. 3d 257, 432 N.E.2d 920, where testimony of the average restaurant owners' earnings when owning a restaurant was only an ambition of the plaintiff was inadmissible.

In its reply brief, the village notes that Tracy would have been incapable of doing most of the jobs that Barnes listed. This was because Tracy, before the May accident, was scheduled for a July hip replacement operation with an estimated three-month recovery period. However, points not argued in the initial brief may be deemed waived and cannot be raised in a reply brief. (87 Ill. 2d R. 341(e)(7); *Comet Casualty Co. v. Schneider* (1981), 98 Ill. App. 3d 786, 424 N.E.2d 911.) Thus, we do not consider this argument.

The village next contends that the trial court improperly rejected defendant's instruction No. 21 and gave plaintiff's instruction No. 4A. These instructions both pertained to the elements of damages. The difference which the village relies upon is that only Tracy's contains the element of aggravation of a prior injury. Although this part of the instruction is contained in IPI Civil No. 30.03, the village argues that there was insufficient evidence to support it.

A tortfeasor is liable for the injuries he causes, even though the injuries consist of aggravation of a preexisting condition. (*Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451.) If IPI Civil No. 30.03 is applicable, considering the facts and the prevailing law, it should be given. (See *Balestri.*) If, however, there is no sufficient evidentiary basis for that instruction, it is reversible error to give it. See *Falkenthal v. Public Building Com.* (1982), 111 Ill. App. 3d 703, 444 N.E.2d 498.

Dr. Ritscherle testified for Tracy that the fracture of the femur he received in May 1980 may have aggravated Tracy's preexisting condition of a restriction of abduction (placing the leg in a spreadeagle fashion away from the midline of the body) by preventing Tracy from doing exercises. Dr. Ritscherle also testified that Tracy's pain in the left hip area was due to multiple surgeries and he could not rule out the possibility that the fracture, and the constant scarring from the fracture, contributed to the pain. The parties discuss various other portions of Dr. Ritscherle's and Tracy's testimony, but these two factors are sufficient evidence of aggravation of a prior condition to warrant giving the challenged jury instruction.

The village next points to three arguments of plaintiff's counsel at trial, arguing that they were prejudicial by attempting to impose a new legal duty upon the village and by interjecting unfounded theories into the case. First, the village argues that one remark of plaintiff's counsel attempted to impose a greater duty upon the village for a person, such as Tracy, who was on crutches. Because the village neither objected to the remark during argument nor raised the issue in its post-trial motion, it is waived. *Thompson v. Lietz* (1981), 95 Ill.

App. 3d 384, 420 N.E.2d 232.

Second, the village argues that counsel interjected a new theory of liability pertaining to inadequate lighting on the stairway. During his argument, plaintiff's counsel said, "we have also stated that the light was not adequate, even though it was a sunny day, you will see the pictures and see ***." No objection by defense counsel was made. During defense counsel's argument he noted that "apparently light is now a factor in this" although not raised in the complaint. Plaintiff's counsel objected. At a sidebar conference, the court noted that the lighting issue was not part of the jury instructions and the issue was not before the jury. Resuming his argument, defense counsel argued that the evidence showed adequate lighting. The village's post-trial motion does raise the issue of the propriety of plaintiff's counsel's lighting argument.

We may consider the challenge to the lighting argument to be waived: at no time during trial did the village object to the argument and ask that the jury be instructed to disregard it. (*McElroy v. Force* (1967), 38 Ill. 2d 528.) Besides waiver, however, any error in the argument was harmless because the village was permitted to respond and rebut the argument. See *Estate of Whittington v. Emdeko National Housewares, Inc.* (1981), 96 Ill. App. 3d 1007, 422 N.E.2d 26.

Third, the village points to plaintiff's counsel's remarks that "there had never been a place where there was [*sic*] more cracks or more indentations or more grooves or more gullys [*sic*]," and that "[t]here's cracks all over the place." It argues that these remarks were improper because they drew attention to the whole stairway instead of just to the precise step that Tracy identified as the location of his crutch catching. Again, no objection to these remarks were made at that time, although the issue was raised in the village's post-trial motion. Thus, this argument may be considered waived. *McElroy v. Force* (1967), 38 Ill. 2d 528.

No error is apparent in any event. Considerable latitude must be afforded counsel in closing argument. (*Northern Trust Co. v. Skokie Valley Community Hospital* (1980), 81 Ill. App. 3d 1110, 401 N.E.2d 1246.) Other remarks of plaintiff's counsel focus in on the precise area of the stairway identified by Tracy as the place his crutch caught. The challenged remarks do not tend to prejudice the jury by giving undue focus on an area not at issue at trial.

Finally, the village contends that the damages awarded were excessive. The jury awarded Tracy $62,500 on the basis of a determination of $125,000 in damages reduced by 50% as a result of Tracy's comparative negligence. Tracy's medical expenses totaled

$8,200. His lost gross earnings were estimated at $7,581. At closing argument, plaintiff's counsel without objection asked for 50% profit on this latter figure, although Tracy's testimony placed estimated profit at 30% for materials and 40% for labor. Tracy's complaint also alleged and his evidence proved injuries in the form of permanent disability and disfigurement and pain and suffering. Dr. Ritscherle testified that the fracture sustained in May 1980 and the scarring resulting from that fracture contributed to Tracy's persistent pain, to a delay in his muscle development following the prior injury, and to the permanent shortening of his left leg. The last of these necessitated the use of a 3/8-inch heel lift. Dr. Ritscherle also stated that the scarring and the alteration of Tracy's femur due to the fracture were permanent conditions.

As a general rule, the amount of damages to be awarded is within the jury's sound discretion, but that discretion is not without limitation. (*Stamat v. Merry* (1979), 78 Ill. App. 3d 445, 397 N.E.2d 141.) Other cases involving injuries to a hip, leg, or foot have held awards in excess of $125,000 not to be excessive. (See, *e.g., Kottmeyer v. Consolidated Rail Corp.* (1981), 98 Ill. App. 3d 365, 424 N.E.2d 345; *Malone v. A. L. Mechling Barge Lines, Inc.* (1978), 63 Ill. App. 3d 756, 380 N.E.2d 497; *Elizer v. Louisville & Nashville R.R. Co.* (1970), 128 Ill. App. 2d 249, 261 N.E.2d 827; *Blyzes v. Midwest Towing Co.* (1969), 109 Ill. App. 2d 48, 248 N.E.2d 305.) We note especially the analogous case of *McKasson v. Zimmer Manufacturing Co.* (1973), 12 Ill. App. 3d 429, 299 N.E.2d 38, wherein a jury award of $175,000 was approved upon proof of $16,000 special damages and upon proof that the plaintiff suffered pain and a permanent shortening of his leg as a result of the breaking of an intramedullary rod, manufactured and distributed by the defendants, which had been implanted in the plaintiff's left femur. We conclude that a determination of damages in the amount of $125,000, before reduction to $62,500 by the comparative negligence factor, was not so palpably excessive as to indicate that the trier acted from passion, prejudice, or other improper motive.

Accordingly, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

SEIDENFELD, P.J., and HOPF, J., concur.