JAMES STEPHENS, Plaintiff-Appellee, *v.* INLAND TUGS COMPANY, Defendant-Appellant.

Fifth District   No. 75-427

Opinion filed November 30, 1976.—Rehearing denied December 28, 1976.

Joseph A. Murphy, of Lucas & Murphy, of St. Louis, and Malcolm D. Durr, of Alton, for appellant.

John F. O'Connell, of O'Connell & Waller, of Belleville, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant appeals from a judgment of the circuit court of Madison County, wherein the trial court denied the defendant's post-trial motion after a jury rendered a verdict in favor of the plaintiff for $85,000 in an action based on negligence under the Jones Act (46 U.S.C. §688 (1970)) and unseaworthiness under General Maritime Law.

Plaintiff James Stephens was employed as a deckhand by defendant Inland Tugs Company. His duties apparently consisted of periodic watches and other general responsibilities in connection with the operation of defendant's barges. One of the general duties of a deckhand is to check the running lights of the barges, which is necessary not only for the safety of the crew, but also for oncoming barges or ships. The usual procedure for checking the lights is to radio the oncoming vessels and verify their perception. Only in rare circumstances is it necessary for a crew member to personally check the lights.

On May 7, 1971, plaintiff was working on the M/V Floyd Baske, a barge operated by the defendant. Both parties agree that it was raining heavily during the early morning hours on that day and that visibility was limited. As a result of the weather, radio communication was not a dependable method of checking the running lights. Consequently, a crew member was required to personally check the lights. Plaintiff and another deckhand were directed to walk along the barges and check the running lights and in this process plaintiff slipped on the walkway and fell into an open hatch containing steel pipe. After the fall, plaintiff was hospitalized for the remainder of the month and received treatment from numerous physicians.

Defendant contends (1) that the trial court erred in allowing the question of defendant's negligence to go to the jury, (2) that the trial court erred in giving certain instructions to the jury, and (3) that the trial court erred in overruling defendant's objections to plaintiff's evidence.

■■■ Defendant contends there was an insufficient amount of evidence to submit the case to the jury. The test to determine whether

there is a submissible jury case under the Federal Employers' Liability Act (45 U.S.C. §51 *et seq.* (1970)) is applicable to a jury trial under the Jones Act. As stated in *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 507, 1 L. Ed. 2d 493, 499-500, 77 S. Ct. 443, 448-49:

> "Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or *in part*' to its negligence." (Emphasis added.)

In view of this test, we hold that there was clearly sufficient evidence to submit the question of defendant's negligence to the jury.

Evidence adduced at the trial indicated that plaintiff was ordered to go out in hazardous weather and check the running lights, and that there were no hatch covers covering the cargo boxes or hatches. The record also makes it apparent that the defendant was well aware that the running lights require periodic checking, and that it was necessary for a deckhand to personally check the lights when radio verification was not possible.

In *Cordle v. Allied Chemical Corp.* (6th Cir. 1962), 309 F.2d 821, the plaintiff fell into an open hatch while walking along the gunnels of a loaded barge. In the subsequent litigation based on the Jones Act, plaintiff alleged that the open hatch should have been closed since it was not in use at the time of his injury. After a jury verdict in favor of the plaintiff, the defendant appealed, contending there was an insufficient amount of evidence to submit the question of negligence to the jury. In affirming the decision the Sixth Circuit Court of Appeals applied the test set out above in *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 1 L. Ed. 2d 493, 77 S. Ct. 443, and recognized the following instruction as an appropriate statement of the law:

> "Now, you are further instructed that an open hatch is not of itself negligence and the defendant through its agents, servants and employees had a right to open the hatch and leave it open for the purposes of its use in the operation of the barge. However, if you believe that ordinary care, under the conditions outlined in the evidence, required the hatch at that time to be closed and the defendant, its agents, servants and employees, failed to exercise such care and left the hatch open, if you believe it was open, and the plaintiff was injured by such failure to close the hatch, you should find for the plaintiff." 309 F.2d 821, 824.

The second issue raised by the defendant is whether the court erred in giving instructions 9, 11, and 12. Defendant apparently contends there was insufficient evidence introduced to warrant specific instruction number 9. However, there was ample evidence to support the giving of this instruction.

We need not consider the defendant's contention with regard to instruction number 11 for no objection was made at the instruction conference. It is well settled that the failure to object to an instruction at the conference on instructions waives any alleged error on appeal. *Hocking v. Rehnquist*, 44 Ill. 2d 196, 254 N.E.2d 515; *Saunders v. Schultz*, 20 Ill. 2d 301, 170 N.E.2d 163.

Defendant further contends that it was error to include within instruction number 12 a reference to plaintiff's loss of future earning capacity. Instruction number 12 reads as follows:

"If you decide for the Plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damage proved by the evidence to have resulted from the negligence of Defendant, or the unseaworthiness of its vessel or equipment:

The nature, extent and duration of the injury.

The aggravation of any pre-existing ailment or condition.

The disability resulting from the injury.

The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries.

The reasonable expense of necessary medical care, treatment, and services received.

The value of earnings lost and the present cash value of any loss of future earning capacity.

Whether any of these elements of damages has been proved by the evidence is for you to determine."

Defendant argues that there was insufficient evidence of plaintiff's loss of future earning capacity to merit this instruction. While there is some doubt as to whether this argument has been sufficiently preserved, we nevertheless regard it as without merit in view of the testimony of plaintiff that he was unable to fully perform his duties as a deckhand subsequent to the accident aboard the defendant's barge, and the expert testimony of Dr. Grundmann stating that plaintiff's injury would be of a recurring and permanent nature.

■■ Viewing the defendant's contentions individually or collectively, this court finds no error in the trial court's instructions to the jury.

The next issue raised by the defendant is whether the trial court erred in overruling defendant's objection to the deposition of Dr. William

Grundmann. Defendant contends that Dr. Grundmann's testimony was, in part, inadmissible because certain responses were based on his role as an examining physician, as opposed to a treating physician. It is true that under certain circumstances, expert medical testimony is limited to objective opinions when the physician is retained solely for the purposes of examining the plaintiff and giving favorable testimony. This proposition was set out in *Jensen v. Elgin, Joliet & Eastern R.R. Co.*, 24 Ill. 2d 383, 183 N.E.2d 211, where the court limited testimony from a physician to objective opinions when it was determined that he had been consulted solely for the purpose of testimony.

■■ However, we are not confronted with a situation where the physician was retained to examine the plaintiff for the purposes of testimony. No evidence was introduced to show that Dr. Grundmann was retained for any purpose other than treating the plaintiff for his back problem. The record indicates that the plaintiff himself called Dr. Grundmann for treatment while a patient in the hospital. There is a significant difference between the role of Dr. Grundmann and that of a physician whose services are retained upon the advice of counsel with the hope of eliciting favorable testimony. Dr. Grundmann personally examined the plaintiff on two occasions, and not only took X rays but administered a series of tests that assisted in forming his diagnosis. Upon our review of the record, we cannot say that Dr. Grundmann should be considered anything but a treating physician, competent to testify as to his professional opinion.

In a related contention, defendant has argued that the hypothetical question submitted to Dr. Grundmann did not contain all the facts adduced at the trial. Although it does not appear from the record that any material facts were excluded from the hypothetical question, there is no rule of evidence requiring all material facts to be included. In *Wirth v. Industrial Com.*, 57 Ill. 2d 475, 312 N.E.2d 593, our Supreme Court adopted the view of McCormick on Evidence (2d ed. 1972) quoting at page 480:

> "The more expedient and more widely prevailing view is that there is no rule requiring that all material facts be included. The safeguards are that the adversary may on cross-examination supply omitted facts and ask the expert if his opinion would be modified by them, and further that the trial judge if he deems the original question unfair may in his discretion require that the hypothesis be reframed to supply an adequate basis for a helpful answer."

In light of this rule, it does not appear that the hypothetical question was improper. Defendant had ample opportunity to confront Dr. Grundmann and inquire as to whether the facts omitted would affect his opinion. No such inquiry was made.

■■ Defendant's final contention can be considered without lengthy discussion. Defendant argues the hypothetical question was faulty because it included diagnoses from other physicians. We do not agree. A hypothetical question is not faulty because it incorporates opinions of other medical experts. *Armour & Co. v. Industrial Com.*, 367 Ill. 471, 11 N.E.2d 494; *Howitz v. Michael Reese Hospital*, 5 Ill. App. 3d 508, 284 N.E.2d 4.

For the reasons stated above, we affirm the judgment of the circuit court of Madison County.

Affirmed.

JONES and EBERSPACHER, JJ., concur.