VICTOR SPILOTRO, Plaintiff-Appellant, *v.* DR. ROSS HUGI, Defendant-Appellee.

Second District No. 80-101

Opinion filed February 25, 1981.—Rehearing denied March 26, 1981.

Jerome A. DePalma, of Belmonte, Kagan, Hibbler & DePalma, of Chicago, for appellant.

Francis D. Morrisey and Norman J. Perry, Jr., both of Baker & McKenzie, of Chicago, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiff, Victor Spilotro, appeals from a judgment of the circuit court of Lake County which directed a verdict in favor of defendant, Dr. Ross Hugi, at the close of plaintiff's case. Plaintiff contends that the court erred in (1) requiring unnecessary facts to be added to a hypothetical question posed by plaintiff to his expert witnesses; (2) sustaining defend-

ant's objections to certain portions of an evidence deposition of an expert witness; and (3) in directing a verdict for defendant.

Plaintiff brought this action for damages alleging that defendant, who was a veterinarian, negligently treated plaintiff's show/hunter horse, Stop-the-Press, and that as a result the horse had to be euthanized. The evidence at trial disclosed that the horse was healthy prior to February 1976 when defendant gave it an intramuscular vaccination injection in the right hip 4 to 5 inches from its midline. An abscess developed in the vicinity of the injection which defendant told plaintiff could have resulted from the vaccination. The animal's condition thereafter deteriorated, and in May it was treated by another veterinarian, Dr. Norman Cornelius, who prescribed antibiotics and vitamins. The horse was also examined by a third veterinarian, Dr. Wayne McIlwraith, who considered recovery hopeless and recommended the animal be euthanized.

Dr. Cornelius was called as a witness by plaintiff and testified regarding his treatment of the horse. He stated that an abscess resulting from an injection would develop very close to the injection site or just below it and that the animal had an abscess 3½ to 4 inches off the midline. He also testified that the standard of veterinarian care required that intramuscular injections in the hip area be given 9 to 12 inches off the midline on a horse the size of Stop-the-Press. By means of a hypothetical question plaintiff inquired of the witness whether an injection given in the area where he had noticed the abscess would have conformed to the standard of care he had described. Defendant's objection was sustained, and plaintiff was required by the trial court, at defendant's request, to reframe the question by adding to it other facts in evidence relating to the location of the injection, the condition of the horse during the period after the injection to its death and the treatment given to it by Dr. Cornelius. When plaintiff inquired in the expanded form of the hypothetical question required by the court, whether the treatment of the horse conformed to the requisite standard of care, the witness responded that it did so conform.

Plaintiff's further inquiry to the witness whether the injection itself was in conformity with the standard of care was objected to by defendant and sustained by the trial court. Plaintiff suggested that the facts added to the hypothetical question had confused the witness, resulting in an unexpected answer. He made an offer of proof outside of the presence of the jury in the form of his original hypothetical question to which Dr. Cornelius then responded that he now understood and that if the injection was given at the site of the abscess it was given too high on the horse. The trial court declined to permit the witness to retract or correct his earlier response, and the offer of proof was refused.

An evidence deposition taken of Dr. McIlwraith before trial was

offered by plaintiff and, in part, admitted in evidence in which he testified he had performed a necropsy on the horse following euthanization. That procedure disclosed that the hind legs of the horse had become uncoordinated because of nerve pressure resulting from fibrosis caused by an abscess in the hip area. In response to a hypothetical question the witness testified the infection was related to a penetrating wound in the rump area and that an injection of the type given the horse by defendant could have caused the abscess.

Defendant raised objections to certain other questions asked of Dr. McIlwraith at the time of his deposition which the trial court subsequently sustained, and the answers were not admitted in evidence. The witness had referred in his testimony to "an abscess in the area of the sacrum." Plaintiff's counsel then inquired of him, "Doctor, would it be fair to determine this as a subsacral abscessation?" Defendant's objection was sustained on grounds of leading the witness. Again, an inquiry whether it was fair to state that there was a national standard of care for injecting horses in the gluteal area was sustained as leading. At the evidence deposition Dr. McIlwraith was also asked the same hypothetical question posed to Dr. Cornelius in trial by plaintiff. Defendant made a general objection and it was also sustained by the trial court. Dr. McIlwraith's response that the injection would not have conformed to the veterinary standard of care was not admitted in evidence during the trial. The trial court directed a verdict in favor of defendant at close of plaintiff's case on the grounds plaintiff had failed to present expert testimony that defendant had deviated from the requisite standard of care in such cases.

■■■ We consider first whether the trial court erred in sustaining defendant's objections to the form of plaintiff's hypothetical questions to Drs. Cornelius and McIlwraith. It has long been the law of this State that a hypothetical question directed to an expert witness is not improper merely because it includes only some of the facts in evidence. (*Chicago & Eastern Illinois R.R. Co. v. Wallace* (1903), 202 Ill. 129, 133; *Morris v. Stewart* (1972), 4 Ill. App. 3d 322, 331.) There is no rule requiring that even all "material" facts be included. (*Wirth v. Industrial Com.* (1974), 57 Ill. 2d 475, 480; *Stephens v. Inland Tugs Co.* (1976), 44 Ill. App. 3d 485, 489.) It is the adversary's responsibility on cross-examination to supply any omitted facts and inquire whether the expert would modify his opinion in light of their addition to the hypothetical question. (*Joynt v. Barnes* (1979), 71 Ill. App. 3d 187, 200.) Under limited circumstances, the trial judge may, if he deems the original question unfair, require the hypothetical question to be posed in a form which offers an adequate basis for a helpful answer. *Chloupek v. Jordan* (1977), 49 Ill. App. 3d 809, 815; see generally *Wilson v. Clark* (1981), 84 Ill. 2d 186.

■■ It was error in the present case to sustain the objections to the hypothetical questions on the grounds they contained insufficient facts. Plaintiff sought only to present opinion evidence relating to whether defendant's treatment conformed to the requisite standard of care in injecting the horse; the additional facts required to be added to the questions by the trial court were concerned with later treatment of the horse by others and its subsequent condition. Certainly those matters might be relevant to the question of what consequences, if any, resulted from defendant's injection but they were not necessary for a proper hypothetical question relating to negligence in administering the injection. It is apparent that the facts required to be added to the hypothetical question also included references to subsequent treatment administered to the horse by the witness himself and he was then asked, in effect, if all procedures were in conformity with the standard of care. It appears that the witness became confused by the expanded form of the question and may well have believed he was being asked whether his own conduct was proper in this matter. In the course of plaintiff's offer of proof, Dr. Cornelius expressed uncertainty as to the time period to which the question directed his opinion, whether May 1976 (when he was treating the horse) or earlier when the injection was given. The error in adding these facts to the form of the question was thereafter compounded when the court refused to let plaintiff clarify it through a narrower question concerned only with the standard of care for injecting horses. See *Schoolfield v. Witkowski* (1964), 54 Ill. App. 2d 111, 121.

We consider next plaintiff's contention the trial court erred in sustaining objections to the questions directed to Dr. McIlwraith in his evidence deposition to which we earlier referred. While it is difficult to understand why these questions were posed on the basis of their "fairness," they were not unduly leading or suggestive and the witnesses' responses should have been admitted in trial. (See *Peebles v. O'Gara Coal Co.* (1909), 239 Ill. 370, 376; *Swartwout v. Evans* (1866), 41 Ill. 376, 378; see also *People v. Schladweiler* (1925), 315 Ill. 553, 556.) We have considered the rulings of the trial court on the other objections to leading questions made by defendant at the evidence deposition and find they were correctly sustained.

■■ While the errors we have discussed in the exclusion of evidence require a new trial, it is also apparent that the evidence presented did not so overwhelmingly favor defendant that no contrary verdict based on it could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) The trial court and both parties consider that the body of law developed in medical malpractice applies also in this veterinarian negligence action. (See generally 78 Am. Jur. 2d *Veterinarians* §7 (1975).) Defendant contends that the directed verdict was proper because no

expert testimony was adduced that there was any deviation from the veterinary standard of care in his treatment of the horse. In medical malpractice cases the plaintiff must generally establish through expert testimony the standard of care against which the defendant doctor's conduct is measured (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 256), and then further show by affirmative evidence that, in light of this standard, the defendant was negligent causing injury to plaintiff. (*Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423.) This further proof may, but need not, be provided by expert testimony. (See *Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 418.) In the present case, however, Dr. Cornelius' testimony setting forth the standard of care required in such cases and the admission by defendant that he injected the horse outside the permissible range for such injections presented a question for the jury whether his conduct was negligent.

■■ Plaintiff has also contended that the trial court erred in striking a portion of his deposition testimony in which Dr. McIlwraith was shown a photograph of Stop-the-Press in which the horse was in a healthy condition. The photograph had been marked with an "x" by defendant during his earlier deposition representing the place in which he had given the injection. Dr. McIlwraith was asked to describe the location of the scarring he had observed on the horse when he saw it in relation to the place marked "x." The witness stated that he could not recognize Stop-the-Press from the photograph, as when he had last seen it the horse was in a deteriorated state shortly before it was destroyed. As the horse in the photograph did not then appear to be in the same condition as when the witness had seen it, the trial court subsequently sustained defendant's objection to the admission of the photograph. The ruling of the trial court was erroneous, and the response of Dr. McIlwraith to the reference to the photograph should have been allowed in evidence. Defendant had identified the photograph as being of the horse in question; it was not offered as substantive evidence of the condition of the horse but merely as a model in order to permit Dr. McIlwraith to more fully explain his observations of the animal during his examination of it. In this light the changed condition of the horse in the photograph from that when treated by the witness should not bar its use in trial.

For the foregoing reasons the judgment of the circuit court of Lake County is reversed and this cause remanded for a new trial consistent with this opinion.

Reversed and remanded.

REINHARD and UNVERZAGT, JJ., concur.