EUGENE MYRE, SR., Plaintiff-Appellant, v. THE KROGER COMPANY, Defendant-Appellee.

First District (1st Division)   No. 87—3347

Opinion filed November 7, 1988.

Karlin & Fleisher and David A. Novoselsky & Associates, both of Chicago (Ronald G. Fleisher and David A. Novoselsky, of counsel), for appellant.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge, Elizabeth A. Brown, Janella L. Barbrow, and Michael A. Meschino, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

The plaintiff, Eugene Myre, Sr., sued the defendant, Kroger Company, to recover damages for injuries sustained when he ate pork rinds that were allegedly tainted with oxalic acid, which he had purchased at the defendant's store. Following a jury trial in the circuit court of Cook County, a verdict was returned for the defendant. Plaintiff now brings this appeal.

On May 10, 1978, the plaintiff and his wife went grocery shopping at a Kroger grocery store in Peoria, Illinois, where they purchased six bags of Country Oven pork rinds. Country Oven is the brand name for Kroger's own products. The pork rinds are manufactured and packaged by Rudolph Foods, then distributed to the Kroger stores. When the plaintiff arrived home, he opened one of the bags of pork rinds and began eating them. He ate four to six pork rinds without noticing anything unusual. When he put the seventh in his mouth, however, he felt a burning sensation. He spit the pork rinds out and noticed that his mouth was full of blood. His tongue continued bleeding, so he had his wife take him to the Methodist Hospital emergency room.

The emergency room physician testified that the plaintiff had a mucosal burn on the left side of his tongue approximately one by two centimeters. He did not see any other burns in the plaintiff's mouth. The doctor testified that, in his opinion, the burn on the plaintiff's tongue was caused by a corrosive substance, but he never tested to determine what that substance might have been.

The plaintiff's wife, Linda, testified that she brought the opened bag of pork rinds to the emergency room and gave some of the rinds to the doctor and to a police officer who had been called to fill out a report of the incident. Neither remembered what happened to the pork rinds that Linda Myre gave them. Mrs. Myre brought the rest of the opened bag home and put it in a Tupperware container. The rinds that the plaintiff spit out were also collected and put in a second Tupperware container.

The next day, May 11, 1978, Mrs. Myre called the Peoria City-County health department and reported the incident. George Hausam, registered sanitarian for the health department, testified that on May 12, 1978, he went to the Kroger store where the Myres purchased the pork rinds and reported the complaint to the store manager. Hausam and the store manager then removed the remaining pork rinds from

the shelves. Hausam stated that the health department never tested the pork rinds. He testified that the complaint was referred to the Food and Drug Administration and that he never heard anything further regarding the complaint.

Plaintiff called three witnesses in its case in chief as adverse witnesses. The first was Charles Jenneman, the sales manager of the Kroger bakery in St. Louis. Jenneman testified that the store manager of the Peoria Kroger's telephoned him and informed him that a customer had complained about their pork rinds. Jenneman then drove to Peoria to investigate plaintiff's complaint. Jenneman testified that Myre gave him some of the pork rinds and told him that the pork rinds were hot. Jenneman tasted the rinds while the plaintiff was watching and experienced no ill effects. The plaintiff stated that he remembered giving the pork rinds to Jenneman, but he did not recall Jenneman eating them in front of him. Jenneman then went to the Peoria Kroger's store and bought a bag of pork rinds that had the same code number as the allegedly contaminated pork rinds. He sampled these pork rinds and again noticed nothing unusual.

Jenneman returned to St. Louis with the pork rinds that Myre had given him. He testified that he reported the incident to his boss, Russell Jaeger, who also tasted the pork rinds without experiencing any ill effects. Jenneman's secretary mailed the pork rinds to David Colwell, the product manager of the Kroger bakery in Columbus, Ohio. Jenneman stated that either he or Jaeger gave the pork rinds to his secretary to mail. Jenneman also testified that he did not know if the St. Louis quality control department had filled out a report regarding the suspected contamination.

David Colwell was the next adverse witness that the plaintiff called. Colwell testified that he never received the package of pork rinds that Jenneman's secretary mailed. He also checked the Columbus plant's quality assurance department, but they had no record of receiving the pork rinds. He did not know what happened to the pork rinds that had been mailed to him, and he was unaware of any test results.

The third adverse witness was Robert Meyer, the vice-president of production for Rudolph Foods. Meyer testified that Rudolph Foods manufactured pork rinds, which are distributed under the Rudolph name and also under other brand names, such as Country Oven. The Rudolph plant packaged approximately 130,000 packages of pork rinds a day, or 30 to 40 million a year. Meyer stated that the cleaning products which Rudolph used to clean its fryers were alkaline and that Rudolph had never used acid in its cleaning process. Meyer had never received any complaint that its rinds contained any oxalic acid or other

cleaning solution, other than plaintiff's claim.

The plaintiff testified that his attorneys hired Charles Neuf, a private detective, in 1981. The plaintiff said that he gave Neuf the allegedly contaminated bag of pork rinds, along with an unopened bag, in April 1981. Plaintiff did not alter the bags in any way from 1978 to 1981, except to take pork rinds out of the opened bag when asked for samples. On cross-examination, defendant asked plaintiff where the four other unopened bags of pork rinds, purchased in 1978 along with the allegedly contaminated rinds, were. The plaintiff testified that he could not recall what happened to those bags, but he assumed that he, the plaintiff, had thrown them away. Plaintiff also testified that by the time he gave the bags to Neuf, the opened bag contained only pork rind crumbs, because he had given the rest of the whole rinds away.

Neuf testified that he received an unopened bag of pork rinds, along with the allegedly contaminated bag, from the plaintiff, in April 1981. Neuf took the bags to his office in Springfield, Illinois. He then placed the bags in sealed containers and put the sealed containers in his evidence room. The bags remained in his evidence room, to which he had the only key, until May 1983, when he turned the bags over to plaintiff's attorney.

The pork rind crumbs and the bag were then given to Marvin Shachter, a chemist, for testing. Shachter testified that the opened bag and the crumbs tested positively for the presence of oxalic acid, a corrosive substance. The concentration of acid could cause burns and bleeding in a person's mouth. In Mr. Shachter's opinion, the oxalic acid was formed when the pork oil in which the rinds were fried interacted with the alkalis used to clean the fryers. The acid would be in a gaseous form; therefore, the rinds became contaminated when they were lifted out of the oil into the air. Shachter stated that this chemical reaction would not necessarily occur uniformly; thus, it was possible that the acid contaminated only a portion of the batch of pork rinds. Shachter also testified that he never tested his theory to determine whether the combination of alkalis and pork oil actually formed oxalic acid.

The trial jury returned a verdict for the defendant, Kroger Company, and the trial court then entered judgment in favor of the defendant. Thereafter, plaintiff filed a post-trial motion, which the trial court denied. Following denial of his post-trial motion, the plaintiff filed his notice of appeal to this court.

■ The first issue that the plaintiff raises on appeal is that the trial court erred in refusing to tender Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1971) (hereinafter IPI Civil 2d). This is called the missing witness instruction. The instruction is given if the

trial court makes a preliminary determination that a party, in all likelihood, would have produced a witness or evidence unless that witness or evidence was unfavorable to it. (*Hollembaek v. Dominick's Finer Foods, Inc.* (1985), 137 Ill. App. 3d 773, 776, 484 N.E.2d 1237, 1240.) The instruction allows a jury to draw an adverse inference from a party's failure to offer evidence or to produce a witness when: (1) the evidence or witness is under his control and could have been produced through reasonable diligence; (2) the other party did not have equal opportunity to obtain the evidence or witness; (3) the evidence or witness would have been produced if it were favorable; and (4) the party has offered no reasonable excuse for his failure to produce. (*Tuttle v. Fruehauf Division of Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 843, 462 N.E.2d 645, 652.) The giving of this instruction is in the trial court's discretion, and the appellate court will reverse only upon a showing of clear abuse of discretion. (*Hollembaek*, 137 Ill. App. 3d at 776, 484 N.E.2d at 1240.) The instruction, however, is not given when the omitted testimony of the missing witness would have been merely cumulative. *Hollembaek*, 137 Ill. App. 3d at 777, 484 N.E.2d at 1240.

■ In the present case, the plaintiff asserts that the defendant here surely would have produced the pork rinds that Myre gave to Jenneman, along with any test results, if they had been favorable to defendant's case. Furthermore, plaintiff alleges that Jaeger would have been called to testify if his testimony would have confirmed that the pork rinds were lost in the mail and that he tasted the rinds without experiencing any ill effects.

Plaintiff, thus, argues that the missing witness instruction should have been tendered because all four prongs of the instruction were present in this case. Plaintiff states that the pork rinds and any test results were under the control of the defendant and could have been produced through reasonable diligence because the defendant claimed it had forwarded the rinds to Colwell; that the rinds were not equally available to plaintiff because defendant took them from the plaintiff; that the defendant would have produced any test results if they proved that there was no oxalic acid in the pork rinds; and that defendant offered no reasonable excuse showing why the pork rinds never reached Colwell.

Plaintiff further contends that the four prongs of the missing witness instruction are also present regarding defendant's failure to call Jaeger to testify at trial. Plaintiff claims that Jaeger was under the defendant's control and was not equally available to him because Jaeger was the defendant's employee and occupied a managerial position. Plaintiff further argues that defendant would have called Jaeger to

testify if the testimony would have clarified who gave the pork rind sample to Jenneman's secretary to mail and would have verified that he had also tasted the allegedly contaminated rinds and suffered no ill effects.

Defendant, on the other hand, asserts that there was no foundation present for tendering the missing witness instruction. Defendant argues that it could not have produced the pork rind sample because it was lost in the mail. Furthermore, because the pork rind sample was lost, defendant could not perform any tests and therefore could not have produced any test results, favorable or unfavorable. In addition, defendant contends that Jaeger's testimony would have been cumulative of the testimony already presented to the court.

Even if the court did apply the four-prong analysis, defendant argues that the missing witness instruction nonetheless was inappropriate. Concerning the pork rind sample, defendant states that the pork rinds were not under the exclusive control of the defendant since the plaintiff kept the original bag, which still contained pieces of pork rind and some crumbs. Shachter actually tested this sample and, accordingly, the allegedly contaminated pork rinds were equally available to both parties.

Likewise, defendant contends that Jaeger was equally available to plaintiff. Plaintiff served defendant with a request to produce, and as a result called Jenneman, Colwell, and Meyer to testify as adverse witnesses. Consequently, defendant argues, plaintiff could have called Jaeger to testify at trial.

After examining the record, we find no evidence that the trial judge abused his discretion in refusing to tender the missing witness instruction. There is no evidence in the record that the pork rind sample mailed by Jenneman's secretary ever reached Colwell or that the defendant performed any tests on the rinds. The missing witness instruction assumes that a party has offered no reasonable explanation for its failure to produce a witness or testimony. In the instant case, defendant did offer a reasonable explanation for its failure to produce any test results—it never performed any tests because the pork rind sample was lost in the mail.

The plaintiff cites *Bubrick v. Northern Illinois Gas Co.* (1970), 130 Ill. App. 2d 99, 264 N.E.2d 560, to support his claim that since the defendant did not produce the test results on the pork rinds, it must be assumed that defendant suppressed the results of those tests because they were unfavorable. In *Bubrick*, this court held that tendering the missing witness instruction was proper when the defendant claimed that certain records which were material to its case had been de-

stroyed in the regular course of business and there was evidence that some of the records were still available, but the defendant had merely failed to produce them. *Bubrick*, 130 Ill. App. 2d at 105-06, 264 N.E.2d at 564-65.

Plaintiff's reliance on *Bubrick* is misplaced. The instruction was held proper in *Bubrick* because no reasonable explanation had been offered as to why the defendant failed to produce the records that had not been destroyed. Conversely, in the instant case, there was no suggestion that the defendant was concealing evidence. Nothing in the record supports plaintiff's allegation that Colwell received the pork rinds or that any tests had ever been conducted by the defendant.

■ Plaintiff's contention that Jaeger's testimony was a crucial link in determining what happened to the pork rind sample that was given to the defendant and that Jaeger was not equally available to him is similarly without merit. Plaintiff cites *Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042, 460 N.E.2d 464, for the proposition that a witness is not equally available if there is a likelihood that the witness would be biased against that party and that a party's employee is presumptively biased. In *Tonarelli*, however, the biased witness was not only employed by the defendant, but had also been sued by the plaintiff a few years earlier. (*Tonarelli*, 121 Ill. App. 3d at 1047, 460 N.E.2d at 468.) This court gave greater weight to the fact that the witness in *Tonarelli* had been sued by the plaintiff and never stated that employment by the other party was *per se* evidence of bias. Additionally, the witness in *Tonarelli* was the only living witness who had knowledge of the facts in the case, and the defense had previously indicated that it planned to call him as a witness, but never did.

In the present case, on the other hand, it is clear that Jaeger's testimony would have merely been cumulative of Jenneman's testimony. The record shows that Jaeger had the least knowledge of the facts compared with the witnesses that plaintiff did call. Furthermore, Jaeger was equally available to the plaintiff here, because, as noted, the plaintiff did call three of defendant's employees pursuant to Supreme Court Rule 237 (107 Ill. 2d R. 237). Thus, plaintiff could have called Jaeger to testify as well.

■ The second issue that the plaintiff raises on appeal is that the trial court abused its 'discretion in allowing the defendant to show a lack of other complaints similar to the plaintiff's complaint. In order to present evidence of the absence of prior accidents or incidents, the party offering the evidence must establish as a foundation that the absence of other incidents occurred when the same product was used and that the product was used under conditions substantially similar to

those in which the plaintiff used the product. (*Schaffner v. Chicago & Northwestern Transportation Co.* (1987), 161 Ill. App. 3d 742, 761, 515 N.E.2d 298, 309; *Salvi v. Montgomery Ward & Co.* (1986), 140 Ill. App. 3d 896, 905, 489 N.E.2d 394, 400.) The decision to admit evidence is normally in the discretion of the trial court, and its decision should be reversed on appeal only upon a showing of abuse of discretion. *Behrstock v. Ace Hose & Rubber Co.* (1986), 147 Ill. App. 3d 76, 84, 496 N.E.2d 1024, 1029.

██ In the instant case, the trial court properly admitted the evidence of lack of similar complaints. Hausam testified that he did not remove Country Oven pork rinds from the Kroger shelf until two days after the plaintiff's incident. A county health department card was introduced into evidence confirming that the product was not removed until two days later. Robert Meyer, vice-president of Rudolph Foods, also testified that each batch of pork rinds manufactured by Rudolph Foods is packaged and delivered to different stores, under different brand names. The batch of contaminated pork rinds was, therefore, distributed to stores other than the Peoria Kroger's, where they remained on the shelves. Consequently, the same product was available to other consumers, and the absence of similar complaints was clearly relevant to this case.

The testimony of the plaintiff's own expert, Shachter, further supports the admission of the evidence. Shachter testified that the chemical reaction which he believed produced the oxalic acid would occur randomly in the manufacturing process and might affect only a small portion of the batch. If this reaction does in fact occur randomly in the defendant's manufacturing process, it is likely that it would have occurred in other batches, because all pork rinds are manufactured according to the same process. Inasmuch as the pork rinds were all manufactured under substantially similar conditions, the admission of the absence of similar complaints was clearly proper.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.