**Bhupendra C. PATEL, also known as "Ben" Patel, and Meena B. Patel, his wife, Plaintiffs–Appellants,**

v.

**Richard C. GAYES, M.D., Thomas Engel, M.D., and Evangelical Health Systems Corporation, doing business as Good Shepherd Hospital, an Illinois corporation, Defendants–Appellees.**

**No. 91–2210.**

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1992.

Decided Jan. 21, 1993.

Rehearing and Rehearing En Banc Denied March 29, 1993.

Kenneth C. Chessick, John W. Fisk (argued), Daniel L. Giudice, Schaumburg, IL, for plaintiffs-appellants.

John Joseph Mustes (argued), Thomas P. Hartnett, Kathleen A. Bridgman, Connelly, Mustes, Schroeder, John N. Seibel, Cassiday, Schade & Gloor, Chicago, IL, for defendants-appellees.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

This is an appeal from a jury verdict for the defendant, Dr. Richard Gayes, in a medical malpractice action. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1988). For the reasons that follow, we affirm.

## I

## BACKGROUND

On October 9, 1986, Bhupendra Patel underwent a cardiac stress test arranged by his physician, Dr. Richard Gayes, and performed by Dr. Thomas Engel, a cardiologist. The test revealed abnormal activity that indicated that Mr. Patel was suffering from heart disease. Dr. Engel informed Dr. Gayes of the results. That same day, Dr. Gayes informed Mr. Patel that the results of the test were abnormal, but he did not instruct him to take any special precautions. Two days later, Mr. Patel moved and serviced a sump pump weighing thirty pounds. Early the following morning, he suffered a heart attack. Following his heart attack, Mr. Patel was treated by Drs. Susarla and Robin.

Mr. Patel and his wife, Meena Patel, brought the present civil action against Dr. Gayes for negligent malpractice. Specifically, they allege that the heart attack could have been prevented had Dr. Gayes cautioned Mr. Patel to avoid strenuous or stressful activities until further tests were performed. The Patels brought their claim in federal court pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). A jury found Dr. Gayes was not liable, and the district court subsequently denied the Patels' request for a new trial. For the reasons that follow, we now affirm.

## II

## ANALYSIS

Mr. Patel and his wife allege four separate trial errors: (1) that the court erred in excluding opinion testimony from two of the physicians who treated Mr. Patel; (2) that the court erred in not reading four proposed jury instructions, and in altering the language of a fifth; (3) that the court

erred in preventing certain hypothetical questions from being asked to the Patels' expert witness; and (4) that the court erred in excluding certain evidence on the scope of damages. We address each of these contentions in turn.

### 1. Exclusion of expert testimony from treating physicians

■ During discovery, Dr. Gayes served an interrogatory pursuant to Rule 26(b)(4)(A) of the Federal Rules of Civil Procedure. He sought the names of all experts who would testify at trial, the subject matter on which they were expected to testify, and the substance of the facts and opinions that they were expected to give. The Patels responded that their only expert would be Dr. John Vyden, a cardiologist.

Prior to trial, Dr. Gayes filed a motion in limine to prevent Drs. Susarla and Robin, Mr. Patel's subsequent treating physicians, from giving *expert testimony* because they had not been identified as experts in the Patels' response to the Rule 26(b)(4) interrogatory. Dr. Gayes had deposed both doctors during discovery. In an in limine proffer of testimony, both Dr. Susarla and Dr. Robin gave opinions on the standard of care to which Dr. Gayes should have adhered. After defense objections, the court disallowed this testimony because the Patels had not identified these two physicians as experts under Rule 26.

As a preliminary matter, we note that "we review a district court's decision to exclude expert testimony under an abuse of discretion standard, and the trial court's determination will be affirmed unless it is 'manifestly erroneous.'" *Mercado v. Ahmed*, 974 F.2d 863, 871 (7th Cir.1992)

(citations omitted). Federal Rule of Civil Procedure 26(b)(4)(A)(i)[1] provides:

> A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

If a party fails to adhere to the standards of Rule 26(b), the district court may, in its discretion, bar the party from presenting that expert's testimony. *Blumenfeld v. Stuppi*, 921 F.2d 116, 117 (7th Cir.1990).

The text of Rule 26(b)(4) would appear to require the disclosure of all persons who would provide expert testimony at trial. However, the Advisory Committee Notes and cases interpreting the rule apply a more narrow interpretation. Specifically, the Notes state that "the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness." Fed.R.Civ.P. 26(b)(4)(A), Advisory Committee Note. Consequently, an expert need not be identified if he was "a viewer or actor with regard to the disputed question." *Jenkins v. Whittaker Corp.*, 785 F.2d 720, 728 (9th Cir.), *cert. denied*, 479 U.S. 918, 107 S.Ct. 324, 93 L.Ed.2d 296 (1986).[2]

---

**1.** In the parties' briefs as well as at oral argument, there appeared to be some question as to the applicability of Illinois Supreme Court Rule 220, which is the state court rule on expert testimony and is worded identically to Federal Rule of Civil Procedure 26(b)(4)(A). However, when there is a Federal Rule of Civil Procedure directly on point, which is not unconstitutional, a federal district court sitting in diversity must apply the federal procedural rule, rather than a conflicting state rule. *Hanna v. Plummer,* 380 U.S. 460, 473–74, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965).

**2.** *Cf. Nelco Corp. v. Slater Elec., Inc.,* 80 F.R.D. 411, 414 (E.D.N.Y.1978) ("[I]t is ... apparent that these provisions are *not* applicable to discovery requests directed at information acquired or developed by the deponent as an actor in transactions which concern this lawsuit.") (emphasis in original); *Quarantillo v. Consolidated Rail Corp.,* 106 F.R.D. 435, 437 (W.D.N.Y. 1985) ("Rule 26(b)(4) sets forth restrictions upon discovery of facts known and opinions held by experts that had been acquired or had been developed *in anticipation of litigation or for trial.*") (emphasis in original).

We must decide whether Drs. Susarla and Robin acquired their opinions about the correct duty of care directly through their treatment of Mr. Patel. If so, the Patels were not required to identify them as expert witnesses under Rule 26(b)(4), and the court erred in excluding their testimony. The Patels contend that they did not have to identify the physicians because "these experts did not become involved in this case in anticipation of litigation, but became involved as treating physicians." Appellant's Br. at 25. Dr. Gayes counters that Drs. Susarla and Robin needed to be identified as experts because their proposed testimony "went beyond the substantive and temporal scope" of their treatment of Mr. Patel. Appellee's Br. at 18. As a result, their opinions "went beyond [their] professional relationship with Ben Patel, and into the realm of pure expert testimony." *Id.* at 22.

In order to determine if an expert need be identified before trial, Rule 26 focuses not on the status of the witness, but rather on the substance of the testimony.[3] *See Nelco Corp.*, 80 F.R.D. at 414 ("[u]nder Rule 26(b)(4)(A), a witness sought to be discovered may be an 'expert' as to some matters and an 'actor' as to others."); *accord Quarantillo*, 106 F.R.D. at 437. Under the Federal Rules, an expert must be identified if his testimony does not come from his personal knowledge of the case, *Jenkins*, 785 F.2d at 728, or if his knowledge was "acquired or developed in anticipation of litigation or for trial." *Grinnell Corp. v. Hackett*, 70 F.R.D. 326, 331 (D.R.I.1976). The testimony of Drs. Susar-

la and Robin with respect to the standard of care falls within this category. As Dr. Gayes points out, at least one of the documents upon which the physicians were asked to comment, the electrocardiogram (EKG), was not used by them to treat Mr. Patel. Therefore, their knowledge, in this instance, was not based on their observations during the course of treating his illness. Moreover, the physicians were questioned about their opinion of the general medical standard of care within the community. As the district court determined, this is "classic" expert testimony. A witness would formulate such an opinion only when preparing for litigation. Accordingly, we cannot conclude that the district court's ruling was "manifestly erroneous."[4]

### 2. Jury instructions

The Patels next contend that the district court committed five reversible errors in its handling of the jury instructions. Specifically, the court refused to read four of the Patels' proposed instructions[5] and substituted the words "wrongful conduct" for "negligence" in the proposed jury instruction on damages. Our review of a district court's choice in jury instructions is limited.

"In diversity cases, state law determines the substance of jury instructions, while federal law governs the procedure in formulating the instructions and the manner in which they are given." *Simmons Inc. v. Pinkerton's Inc.*, 762 F.2d 591, 595 (7th Cir.1985). Moreover, we review jury instructions only to determine if "the instructions as a whole were sufficient to inform

---

3. Under Illinois case law, the Patels might have a stronger argument that the doctors did not have to be identified. *See O'Brien v. Meyer,* 196 Ill.App.3d 457, 143 Ill.Dec. 322, 324, 554 N.E.2d 257, 259 (1989) (treating physicians need not be disclosed as experts under Rule 220); *Dugan v. Weber,* 175 Ill.App.3d 1088, 125 Ill.Dec. 598, 601, 530 N.E.2d 1007, 1010 (1988) ("The physician's relationship to the case, not the substance of his testimony, qualifies him as a Rule 220 expert."). Although these cases seem to set down a blanket rule that a treating physician not retained to give an opinion at trial need not be disclosed, there is also language in *O'Brien* warning against trying to bring expert testimony in "through the back door." 143 Ill.Dec. at 324, 554 N.E.2d at 259.

4. Although not necessary to our decision, we note that Dr. Vyden, the Patels' expert cardiologist, did testify to the jury that it was his opinion that Dr. Gayes had not adhered to the general medical standard of care.

5. The district court noted on the record that all of the Patels' proposed instructions were actually rejected because they were not timely submitted. However, for the sake of completeness, we shall elaborate further because the Patels dispute the clarity of the instruction deadline. Tr. of Mar. 7, 1991 at 818, 822.

the jury correctly of the applicable law." *United States v. Villarreal*, 977 F.2d 1077, 1079 (7th Cir.1992).[6] Consequently, "when assessing the adequacy of jury instructions given at trial, we consider not only 'the instructions as a whole, but [also] . . . the opening statements, the evidence, and the closing argument' to determine if the jury was adequately informed of the applicable law." *Smith v. Chesapeake & Ohio Ry.*, 778 F.2d 384, 387–88 (7th Cir.1985). With these standards in mind, we turn to proposed jury instruction numbers 9, 15, 16, and 22, which were refused in this case.

■ Proposed Instruction 9 would have instructed the jury that it could draw an adverse inference against Dr. Gayes for failing to introduce into evidence an American Heart Association study upon which a substantial portion of his testimony was based.[7] Instruction 9 is based upon Illinois Pattern Civil Jury Instruction No. 5.01, which by its terms is only appropriate when the evidence withheld was not readily available to the other party. Illinois Pattern Jury Instructions No. 5.01 (West 3d ed. 1992) (hereinafter IPI); *Myre v. Kroger Co.*, 176 Ill.App.3d 160, 125 Ill.Dec. 713, 715, 530 N.E.2d 1122, 1124 (1988). Whether to give IPI No. 5.01 is a matter within the sound discretion of the trial court. *Roeseke v. Pryor*, 152 Ill.App.3d 771, 105 Ill.Dec. 642, 648, 504 N.E.2d 927, 933 (1987). In the present case, the challenged evidence was a study issued by the American Heart Association, which presumably the Patels could have obtained on their own. Moreover, the Patels were permitted to argue to the jury the fact that the study had not been introduced. Accordingly, we cannot accept the contention that the Pa-

tels were prejudiced by the trial court's decision.

■ Proposed Instruction 15 would have instructed the jury that at times a physician's duty of due care requires him to bring a specialist in to assist him. At trial the Patels argued that Dr. Gayes should have hospitalized Mr. Patel for further tests once Dr. Gayes informed him of the stress test results. Consequently, the district court reasoned that an instruction on the duty to call in a specialist was subsumed within the argument that Dr. Gayes should have hospitalized Mr. Patel.[8] Tr. of Mar. 7, 1991 at 820. The ruling of the district court was not reversible error.

■ Proposed Instruction 16 would have instructed the jury that a cardiologist may properly delegate to a patient's regular physician the duty of explaining the results of a stress test. Because the Patels voluntarily dismissed Dr. Engel from the suit, the district court's decision not to give such a specific instruction directing attention to that physician's conduct was within the court's sound discretion and did not result in an unfair trial.

■ Proposed Instruction 22 would have instructed the jury that Mr. Patel could recover damages if the heart attack aggravated a pre-existing coronary disease. The instructions actually read to the jury contained no reference to pre-existing injuries. However, at trial Dr. Vyden, the Patels' expert, stated that Mr. Patel's heart attack aggravated his already existing condition of coronary artery disease. If, as was the Patels' theory, Dr. Gayes would have been able to prevent the heart attack if he had checked Mr. Patel into a hospital, then it

---

**6.** *See also Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 741–42 n. 7 (7th Cir.1990) ("With [jury] instructions, we don't pick nits; we examine the whole of what was given and look for overall fairness and accuracy."); *Goldman v. Fadell*, 844 F.2d 1297, 1302 (7th Cir.1988) (inadequacy of jury instructions is only reversible error when "the jury's comprehension of the issues is so misguided that a litigant is prejudiced") (citations omitted).

**7.** Dr. Gayes testified that he relied upon the study to estimate the chance of Ben Patel having

a heart attack, given the other coronary risk factors that he had. Additionally, he relied upon the study as the basis for his opinion that he had not deviated from the appropriate standard of care.

**8.** Dr. Vyden testified that Dr. Gayes deviated from accepted standards of care in not hospitalizing Mr. Patel immediately. Specifically, Dr. Vyden stated that "not to have hospitalized the patient, not to have immediately ordered follow-up tests is in a word outrageous." Tr. of Mar. 7, 1991 at 442–43.

appears, in a sense, that his negligence would have "caused" (or at least would have "contributed to") the aggravation of Mr. Patel's disease. Dr. Gayes does not dispute this theory. Instead, he asserts that the coronary artery disease Mr. Patel suffered was not made worse by his conduct, rather that the condition progressed naturally into a heart attack.

■ Under Illinois case law, a plaintiff is generally entitled to an instruction on the aggravation of a pre-existing injury if there is a sufficient evidentiary basis to permit a jury to find that the defendant's conduct made a pre-existing injury worse. *Tracy v. Village of Lombard*, 116 Ill.App.3d 563, 71 Ill.Dec. 838, 847, 451 N.E.2d 992, 1001 (1983). The district court was of the view that a pre-existing injury instruction was not appropriate on the facts of this case:

> The pre-existing ailment was coronary artery disease, blockage. How this ailment was aggravated is not shown. It's really not an aggravation case.

Tr. of Mar. 7, 1991 at 819. The jury was instructed that it could assess damages for disability and for pain and suffering caused by Dr. Gayes' alleged negligence. We believe that these instructions, when read as a whole, sufficiently depicted the Patels' theory of liability that there was no real risk that the jury was misguided by the omission of a pre-existing injury instruction. Accordingly, the district court did not commit reversible error in omitting the proposed instruction.

■ The Patels also contest the district court's substitution of the words "wrongful conduct" for "negligence" in the damage instruction,[9] which was modeled after IPI No. 30.01. We cannot say that the district court's choice of instruction phrasing amounted to an abuse of discretion. Moreover, because the jury did not find Dr. Gayes liable at all, a prerequisite for awarding damages under *any instructions* tendered, any error in the precise wording

of the damages instructions would have been harmless.[10]

3. The hypothetical question to Dr. Vyden

■ As noted above, prior to trial, Dr. Gayes requested from the Patels the identity of any expert witnesses that they sought to call, as well as the substance of any testimony that these witnesses would give, and the facts upon which they would base that testimony. In their response, the Patels identified Dr. Vyden as a medical expert and stated that he would discuss, in part, the effect on Mr. Patel of social dancing the evening before his heart attack. Subsequent to answering the interrogatory, it was learned that Mr. Patel had not been dancing the evening before the attack. However, he had moved and serviced a sump pump the morning the incident occurred. Under Rule 26(e)(1)(B), the Patels were required to supplement their interrogatory response regarding Dr. Vyden's testimony to correct this factual error; they failed to do so. Prior to trial, the court granted Dr. Gayes' motion in limine to limit the Patels' expert to testifying only to opinions previously disclosed during discovery.

At trial, Dr. Vyden testified that during his deposition he erroneously had believed that Mr. Patel had been dancing the evening before his attack. The Patels' counsel then attempted to elicit from him, through the use of hypothetical questions, the effect that moving a sump pump would have had on Mr. Patel. The court barred this testimony because the information about the sump pump had not been disclosed to Dr. Gayes previously. The Patels claim that the exclusion of this testimony was erroneous because their question was a proper hypothetical to an expert. In support of this argument, they cite a number of Illinois state court cases approving the

---

**9.** The jury was instructed separately on the issue of liability in terms of negligence. Tr. of Mar. 11, 1991 at 892–93.

**10.** Federal Rule of Civil Procedure 61 governs when a mistake made at trial is harmless error:

> The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Fed.R.Civ.P. 61.

use of hypotheticals.[11]

The Patels' argument is misplaced because the district court excluded this information as a sanction for failing to conform with the disclosure requirements of Rule 26(e), not because the questions eliciting it had been improperly framed. Tr. of Mar. 7, 1992 at 449–50. Under the Federal Rules, the district court has the discretion to impose sanctions on a party if that party fails to meet the requirements of Rule 26. *Blumenfeld v. Stuppi,* 921 F.2d 116, 117 (7th Cir.1990). Among the sanctions available to the court for a violation of Rule 26(e) are "exclusion of evidence, continuance, or other action as the court might deem appropriate." Fed.R.Civ.P. 26(e), Advisory Committee Notes. Accordingly, unless the district court abused its discretion in excluding the evidence, its decision will not be disturbed on appeal. We find that no abuse of discretion occurred.

4. Exclusion of damage evidence

■ The district court excluded expert testimony about Mr. Patel's alleged reduced life expectancy, his risk of a second heart attack, and his personal fear of another heart attack. Mr. Patel claims that it was established to a reasonable degree of certainty that he was likely to have another heart attack and that his life span had been shortened by the heart attack. Consequently, he claims that the district court erred in excluding this evidence from the jury's calculation of damages. The Patels presented their arguments in response to a series of in limine motions to exclude the evidence. The district court concluded that this evidence was too speculative in the absence of expert testimony that would illustrate the risk to a reasonable medical certainty. Tr. of Dec. 28, 1990 at 24–33. We cannot say that this determination was unreasonable. Accordingly, the district court did not abuse its discretion.

**11.** *See, e.g., Stephens v. Inland Tugs Co.,* 44 Ill.App.3d 485, 3 Ill.Dec. 157, 358 N.E.2d 324 (1976) (experts may properly be asked hypothetical questions even though not all material facts of trial are included); *Morris v. Stewart,* 4 Ill.

CONCLUSION

The judgment of the district court is affirmed.

A<small>FFIRMED</small>.

App.3d 322, 280 N.E.2d 746, 753 (1972) (hypothetical questions posed to an expert are not improper merely because they include only some of the facts in evidence).