MaKeeda LEBLANC, Administratrix of the Estate of Angela DeVonne Johnson, and Keith D. Johnson, Plaintiffs–Appellees,

v.

GREAT WESTERN EXPRESS, a Division of Lisa Motorlines, Inc., and Joe Mathis, Defendants–Appellants.

No. 01–2533.

United States Court of Appeals, Seventh Circuit.

Argued June 4, 2002.

Decided Feb. 14, 2003.

Before COFFEY, EASTERBROOK, and WILLIAMS, Circuit Judges.

*ORDER*

Defendants–Appellants Great Western Express ("Great Western") and Joe Mathis ("Mathis") appeal a jury verdict arising from a personal injury lawsuit stemming from a multi-vehicle accident in January 1996 near Richmond, Indiana. They argue that the district court erred (1) in submitting a defective instruction to the jury; (2) in failing to grant the defendants' motion for a directed verdict; and (3) in engaging in an *ex parte* communication with plaintiffs' counsel. We affirm.

## I.

On January 7, 1996, during a blinding snow storm, a multi-vehicle accident occurred on Interstate 70 near Richmond, Indiana. A truck operated by Mathis, an employee of Great Western, smashed into the rear of a vehicle driven by Angela Johnson, who suffered massive head injuries as a result of the impact and died at the scene. Keith Johnson, a passenger in Angela Johnson's vehicle, was seriously injured.

Angela Johnson's administratrix, MaKeeda LeBlanc, filed a wrongful death action in federal court against defendants Mathis and Great Western. Keith Johnson filed a negligence action in the same court against these same defendants. The suits were consolidated on common issues of fact, and went to trial in April of 2001 before a magistrate judge with the consent of the parties. On May 14, 2001, the jury returned a verdict in favor of the Johnsons.

The evidence at trial, viewed in a light most favorable to the verdict, *Cruz v. Town of Cicero*, 275 F.3d 579, 583 (7th Cir.2001), supports a finding of the following facts at the time of the accident: (1) Angela Johnson's car was stopped on the roadway, with its hazard lights flashing, because the lanes and shoulders in front of her were blocked by other cars that had been involved in an earlier collision; (2) while stopped, her passenger Keith Johnson exited the vehicle, walked to the rear of the car, and waved his arms over his head in an attempt to signal the oncoming traffic to slow down; (3) Keith Johnson then observed a "gray or metal grey" trailer truck approaching the scene, at which he point he turned and started back toward the front of the Johnson vehicle; (4) before he made it back to the car, a semi-trailer driven by Mathis slammed into the rear end of the Johnson car, killing Angela

and propelling Keith Johnson through the air and into a culvert on the side of the highway.

At the close of the plaintiffs' case-in-chief, counsel for the defendants motioned for a directed verdict, alleging that there was no evidence upon which a reasonable person could find that the defendants could have been the proximate cause of Keith Johnson's injuries and Angela's death. The court denied the motion. At the close of the defendants' case-in-chief, counsel for the plaintiffs observed that the defendants had not called Marie Mathis, Joe Mathis' wife at the time of the accident and a passenger in the front seat of his vehicle at the time of the collision. An investigator retained by plaintiffs' counsel contacted Marie (now known as Marie Tinker due to remarriage) at her home in Texas and determined that she would be able to provide testimony favorable to the plaintiffs. She stated that she was reluctant to testify because her ex-husband (Joe Mathis) had allegedly threatened her life on several occasions.

The Johnsons' attorney informed the magistrate judge, in open court, that the Johnsons intended to call a rebuttal witness, but refused to reveal the identity of the witness. When the magistrate insisted upon knowing the witness's identity and the reason why the witness's identity was being withheld, plaintiffs' counsel requested an *ex parte* conference in chambers. During this conversation, counsel identified the witness as Marie Tinker, the ex-wife of defendant Joe Mathis, and explained to the magistrate judge that Tinker was reluctant to appear because she feared for her physical safety. At no time during this conversation was there any reference or discussion of the substance of Tinker's prospective testimony, or any matter bearing on the evidence in the case.

Plaintiff's counsel requested of the court that she be allowed to tender an offer of proof. The court allowed Tinker to be questioned outside the presence of the jury. After having had an opportunity to hear her testimony, the judge barred Tinker from testifying as a true rebuttal witness, ruling that her identity was well-known and that she was available to be called as a witness: "She was well known before the beginning of defendant's case and could have testified in plaintiff's case-in-chief."

After the presentation of the testimony, the court held a preliminary jury instruction conference to discuss the proposed instructions and verdict forms submitted by the parties. At the conference, defense counsel requested that the final verdict form to be submitted include the names of eleven non-party drivers involved in the accident, together with instructions that the jury be directed to assign a percentage of liability to each of the parties, if any. Defense counsel was asked by the magistrate judge whether he was prepared to tender such a proposed verdict. In response, he replied: "No, Sir, I did not tender one. I thought the Court was going to put one together." The magistrate stated that he intended to aggregate the non-party drivers on the verdict and have the jury assign a percentage of fault to the total group, and, on the other hand, that "[i]f counsel wanted to preserve your record on that you should have tendered [a proposed verdict form] that had them set out separately." Defense counsel responded that he "didn't know how to do it, and I guess I was looking for some judicial help on that one."

After the trial judge considered the parties' arguments and formulated his final version of the instructions, he allowed the parties to review the same and enter any objections formally on the record. Coun-sel for the defendants again objected to the aggregation of the non-parties and a percentage of liability for each on the verdict form and stated that "we believe that those non-party defendants should be listed individually, as provided by the Indiana pattern jury instructions." Counsel also repeated his admission that he "didn't know how to do it." The magistrate then offered to add the names of the non-parties to the end of the jury instructions concerning the law of comparative fault, to which defense counsel responded:

Judge, for purposes of this trial, and because of other pending litigation, I need separate lines. Either the court is going to grant my request for separate lines or you have got to do it aggregate. I don't have a choice because of a pending lawsuit in Judge Tinder's court involving all the non-parties.

Defense counsel then explained that Great Western Express had filed a property damage suit against numerous drivers involved in the accident. The magistrate judge was unmoved, and held that listing the eleven non-parties on the verdict, and having the jury attempt to assign a percentage of liability to each one individually would "unduly complicate the jury's deliberation and possibly confuse the issues in the case." The court then issued the verdict form listing the names of the non-parties in the aggregate so as to illustrate the assessment of the liability.

The jury returned verdicts finding Mathis and Great Western to have been 60% negligent for the Johnsons' damages while assessing the "nonparty participants" in the aggregate with 40% liability. The jury also determined that the defendants were liable for damages in the amount of $1,537,424 to Angela Johnson's estate and $90,000 to Keith Johnson. The jury then reduced these amounts by 40%, assessing the comparative fault of the non-

parties, to $922,454 and $54,000, respectively.

## II.

Mathis and Great Western argue on appeal that the district court erred (1) by failing to list separately eleven non-parties in the jury verdict forms; (2) by dismissing the defendants' motion for a directed verdict, made at the close of the case-in-chief of the plaintiffs; and (3) by engaging in an *ex parte* communication with plaintiffs' counsel about the identity of a proposed witness.

### A.

In diversity actions, state law determines the substance of jury instructions and federal law governs the procedures in formulating and giving such instructions. *See Patel v. Gayes*, 984 F.2d 214, 218 (7th Cir.1993). Initially we examine whether the jury instructions "as a whole, in a common sense manner, avoiding fastidiousness, [conveyed] the correct message ... to the jury reasonably well." *Id.* If the instructions fail in this regard, we look to see if the complaining party was prejudiced. *See id.*

■ The defendants claim the instructions violate Ind.Code § 34–51–2–11 in failing to list separately all eleven non-parties. Even if we were to hold that such aggregate listing was insufficient under Indiana law, we cannot hold that the defendants in this case were prejudiced thereby. Under the Federal Rules of Civil Procedure, a party wishing to appeal an erroneous jury instruction must object in open court on the record before the jury retires, "stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51. Whether defense counsel's statements to the judge concerning the alleged inadequacy of the verdict forms arose to the level of a "distinct statement of the matter

objected to" is largely irrelevant. As counsel for the defendants acknowledged he failed to tender instructions on their behalf, we hold that the matter was waived. Previously we have held that a party who objects to an instruction "must do more than submit a proposed instruction to the trial court." *Dawson*, 135 F.3d at 1165. Here, the defendants even failed to submit a proposed instruction to the court; in fact, defense counsel asked for "judicial help" and quite literally expected the court to craft a jury verdict form to its liking.

### B.

We review a trial court's denial of a motion for a directed verdict under the "reasonable person" standard. *See Mayer v. Gary Partners & Co. Ltd.*, 29 F.3d 330, 335 (7th Cir.1994). Under this standard, if a plaintiff has not shown that reasonable persons could find the evidence "justifies a decision for a party on each essential element, the court should grant judgment as a matter of law" to the defendant. *Id.*

■ Based on the record before us, we refuse to hold that a reasonable person could not hold the defendants liable for Keith Johnson's injuries and Angela Johnson's death. Two eyewitnesses testified that they saw Keith Johnson's body being propelled through the air just as Mathis' truck was crashing onto the scene and becoming entangled in and part of the multi-vehicle accident. The fact that Keith Johnson quite literally did not know what hit him was not surprising. What is more surprising is that he lived to tell about it to the best of his ability.

### C.

■ While *ex parte* communications are not favored, they are not necessarily prejudicial, particularly when the safety and physical well-being of a potential witness is involved. *See United States v. Napue*, 834

F.2d 1311, 1316 (7th Cir.1987). We review a district court's refusal to grant a mistrial on these grounds under the "abuse of discretion" standard. *See id.* We refuse to conclude that the district judge abused his discretion in this case. The witness stated that she feared for her safety, but in fact never testified in front of the jury because the judge ultimately found that in fact she was not a true rebuttal witness. Furthermore, in this particular factual situation, the proposed witness merely advised the court she was fearful and neither the court nor the witness at any time had any discussion before the jury about the facts of the particular case at issue.

### III.

The judgment of the district court is AFFIRMED. We do not believe that Great Western's appeal is frivolous, and DENY LeBlanc's Rule 38 motion for damages and costs.